60 F.3d 1249
 130 Lab.Cas. P 33,256, 2 Wage & Hour Cas.2d
(BNA) 1377
 Norman BANKSTON, Herman Davila, John E. George, Jr., and
Rolando Hernandez, Plaintiffs-Appellees/Cross-Appellants,
v.
STATE OF ILLINOIS, Illinois State Department of Central
Management Services, Stephen B. Schnorf, both in his
capacity as Director of Department of Central Management and
individually, Defendants-Appellants/Cross-Appellees.
 Nos. 94-1160, 94-1837, and 94-1838.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 17, 1995.
Decided July 26, 1995.
 
 Jac A. Cotiguala (argued), Mark H. Mennes, Gregory R. Sun, Cotiguala & Mennes, Chicago, IL, for plaintiffs-appellees.
 Gary M. Griffin, Asst. Atty. Gen., Brian F. Barov (argued), Jan E. Hughes, Asst. Atty. Gen., Office of Atty. Gen., Civil Appeals Div., Chicago, IL, for defendants-appellants.
 Before BAUER, CUDAHY, and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 The plaintiffs, all police officers for the Illinois Department of Central Management Services (CMS), sued their employer for damages and back wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. Secs. 201-219, and the Illinois Minimum Wage Law, 820 ILCS 105/1-15 (1992). They alleged that the state failed to pay them for the pre- and post-shift hours and lunch hours they worked. They also claimed that the state did not pay them at one-and-one-half times their normal rate, as the FLSA requires, for overtime they worked from 1990 forward. The defendants claimed that the officers, all of whom maintained the rank of sergeant, were exempt from the FLSA because they were executive employees.
 
 
 2
 Only the FLSA claims went to the jury, which returned a verdict in favor of the plaintiffs and awarded damages to the plaintiffs on all claims except back pay for pre- and post-shift work. Following the jury verdict, the plaintiffs moved to amend the judgment to include liquidated double damages pursuant to the FLSA and punitive damages under the Illinois Minimum Wage Law (even though the plaintiffs had apparently dropped their Illinois Wage Law claim before trial). The plaintiffs also moved for costs in the amount of $8,096.42 and attorneys' fees of $96,213.75. The defendants filed a post-trial motion for judgment as a matter of law, or, in the alternative, for a new trial, or, in the alternative, for remittitur. The district court denied defendants' motions and plaintiffs' motion for punitive damages. The court granted plaintiffs' motion for liquidated damages. And it originally granted plaintiffs' motion for costs in the amount of $120.00, but later added $7,946.42 in response to plaintiffs' motion for reconsideration. The court also awarded plaintiffs $55,537.50 in attorneys' fees.
 
 
 3
 Both sides appeal the various district court dispositions of their motions. The defendants argue that they are entitled to a judgment as a matter of law because the plaintiffs all hold executive positions and are, therefore, exempt from the overtime provisions of the FLSA. In the alternative, the defendants ask for a new trial on either liability or damages, a remittitur of liquidated damages, and a remittitur of attorneys' fees and costs. Plaintiffs seek additional attorneys' fees, arguing that the district court failed to properly apply the uncontradicted market rate.
 
 
 4
 I. Whether Plaintiffs are Bona Fide Executives under the FLSA
 
 
 5
 Defendants hinge the bulk of their claims on the issue of plaintiffs' status under the FLSA. They moved for judgment as a matter of law, arguing that the evidence showed that, except for the period from January 6, 1991 to September 6, 1991, the plaintiffs were bona fide executive employees and were therefore exempt from the overtime provisions of the FLSA.
 
 
 6
 The district court denied this motion, and we review its denial de novo. Henderson v. DeRobertis, 940 F.2d 1055, 1057 (7th Cir.1991), cert. denied, 503 U.S. 966, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992). Judgment as a matter of law is proper only where " '... reasonable people, viewing the facts most favorably to the plaintiff and disregarding conflicting unfavorable testimony, could not conclude that the plaintiff has made out a prima facie case.' " Id. (Citations omitted). Under the FLSA, all employers, including state and local governments, must pay their employees one-and-one-half times their normal rate for all hours worked over forty in one week. 29 U.S.C. Sec. 207(a)(1). Under the bona fide executive exception, however, an employee serving as a bona fide executive, as defined by the FLSA, is exempt from the overtime provisions. 29 U.S.C. Sec. 213(a)(1).
 
 
 7
 It is the employer's burden to prove the application of the executive exemption, an exemption that is to be construed narrowly. Klein v. Rush-Presbyterian-St. Luke's Medical Ctr., 990 F.2d 279, 282-83 (7th Cir.1993). So, in order to find for the defendants, we must determine that, based on the evidence as construed in the light most favorable to the plaintiffs, no reasonable juror could have concluded that the plaintiffs were not bona fide executive employees (except for the period January 5, 1991-September 6, 1991, a period for which the defendants do not claim to be entitled to judgment as a matter of law for reasons we will explain below).
 
 
 8
 For an employee to be exempt from the overtime provisions of the FLSA, an employer must prove that the employee is one:
 
 
 9
 (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
 
 
 10
 (b) Who customarily and regularly directs the work of two or more other employees therein; and
 
 
 11
 (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
 
 
 12
 (d) Who customarily and regularly exercises discretionary powers; and
 
 
 13
 (e) Who does not devote more than 20 percent ... of his hours of work in the workweek to activities which are not directly or closely related to the performance of the work described in paragraphs (a) through (d) ...; and
 
 
 14
 (f) Who is compensated for his services on a salary basis of not less than $155 per week....
 
 
 15
 29 C.F.R. Sec. 541.1. This test is commonly divided into a duties component, subparts (a)-(e), and a salary component, subpart (f), both of which the defendant must prove in order for the employee to be exempt. See Barner v. City of Novato, 17 F.3d 1256, 1259-60 (9th Cir.1994).
 
 
 16
 Generally, an employer cannot show that an employee is exempt if the employer docks the employee's pay for partial day absences, violations of rules other than significant safety rules, and other barometers of the quantity or quality of the employee's work. See 29 C.F.R. Sec. 541.118. Commonly known as the "no-docking rule," this regulation does not require proof that a deduction actually has been made from an employee's salary; rather, it is enough that one could have been made for this regulation to remove an employee from exempt status. Klein, 990 F.2d at 286. This rule applied to public sector employees until the Department of Labor added a new regulation allowing public employers to dock their exempt employees for partial day absences without eliminating their exemption from the FLSA. 29 C.F.R. Sec. 541.5d. Defendants acknowledge that the no-docking rule prevents them from showing that plaintiffs were exempt employees until September 6, 1991, when this change was made. The court instructed the jury on this rule change.
 
 
 17
 However, the change does not permit deductions for other quantity or quality considerations, such as a penalty for violating rules other than safety rules of major significance. 29 C.F.R. Secs. 541.118(a)(4) & (5). Plaintiffs presented testimony from various sources that they were subject to salary deductions or other unpaid leave as discipline for violating any rule of conduct.[1] CMS commander Harris, for example, testified that officers of plaintiff's rank may be suspended without pay for violating any CMS rule. The defendants presented no evidence to contradict this testimony. Therefore, it was reasonable for the jury to conclude that the plaintiffs were not exempt executive employees because they were subject to being docked for pay for reasons that would violate the no-docking rule. The defendants are not entitled to judgment as a matter of law.
 
 
 18
 The defendants also argue that, even if they violated the FLSA's overtime provisions, some of plaintiffs' claims were time-barred. Plaintiffs' claims before January 5, 1991 are time-barred, defendants argue, because plaintiffs filed their original complaint on January 5, 1993 and, except for cases of willful violations, claims under the FLSA must be brought within two years of the violation. See 29 U.S.C. Secs. 201 et seq.; Portal-to-Portal Act of 1947, Sec. 6(a), 29 U.S.C. Sec. 255(a); McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129, 108 S.Ct. 1677, 1679, 100 L.Ed.2d 115 (1988). Defendants argue that there was insufficient evidence to support a conclusion that they acted willfully; therefore, they are entitled to judgment as a matter of law as to all claims arising prior to January 5, 1991.
 
 
 19
 We begin by noting that, while the defendants bore the burden at trial of showing that the plaintiffs were exempt employees, the plaintiffs bore the burden of showing that the defendants' conduct was willful for purposes of the statute of limitations. See Walton v. United Consumers Club, Inc., 786 F.2d 303, 308 (1986). It is the jury's province to decide which limitations period, two or three years, applies in light of the plaintiffs' evidence that the defendants acted willfully.[2] An employer acts willfully, for purposes of establishing the proper statute of limitations, where he knows or shows reckless disregard for whether his actions are unlawful under the FLSA. McLaughlin, 486 U.S. at 133, 108 S.Ct. at 1681. The district court instructed the jury that it should apply the three year limitation if it found the defendants' actions willful and the two year statute of limitations otherwise.
 
 
 20
 We do not know whether the jury found the defendants' actions willful--the court did not submit a special verdict form to the jury that would reveal such a determination. But the jury heard that the defendants received a memorandum from its legal department in 1985 that explained their responsibilities under the FLSA. That memorandum advised that exempt employees could not be docked pay for partial day absences. This advisory put the defendants on notice that treating the plaintiffs as managers while at the same time docking their pay for partial day absences were inconsistent positions. Yet, as the jury heard, the plaintiffs were subject to being docked pay for partial day absences. The jury could reasonably have found that this inconsistency amounted to reckless disregard of the FLSA's requirements. Therefore, it was reasonable for the jury to conclude that the three-year statute of limitations applied.
 
 
 21
 As an alternative to judgment as a matter of law, the defendants moved for a new trial because, they claim, the jury rendered inconsistent verdicts and the trial court improperly allowed evidence of defendants' violations prior to January 5, 1991 and after September 6, 1991. The jury determined that the defendants were liable, but did not award the plaintiffs all the damages they requested. The jury withheld damages on the plaintiffs' claims that they were denied pay for pre- and post-shift time they worked. The defendants argue that this verdict indicates that the jury found that the plaintiffs were exempt executive employees for purposes of the pre- and post-shift hours but not exempt for purposes of all other claims, conclusions that are inconsistent.
 
 
 22
 We do not, of course, know exactly why the jury refused to award the plaintiffs damages for the pre- and post-shift hours. A reasonable explanation, however, is that the jury did not believe that the plaintiffs had proved that they incurred any pre- or post-shift damages regardless of the plaintiffs' employment status. The jury did not render inconsistent verdicts.
 
 
 23
 Nor did the trial court err in allowing evidence of defendants' violations prior to January 5, 1991 and after September 6, 1991. As we explained above, the law did not preclude the defendants' liability for these periods; moreover, whether the law precluded liability for each of these periods included factual decisions that the jury had to make (i.e., whether the defendants' conduct was willful so as to invoke the three year limitations period and whether the plaintiffs were subject to being docked for reasons that would place them outside the bona fide executive exemption). A jury cannot be expected to resolve a question of fact without hearing evidence as to what occurred. The defendants are not entitled to a new trial.
 
 
 24
 II. Whether the District Court Abused Its Discretion in
 
 Awarding Liquidated Damages
 
 25
 The FLSA presumptively authorizes the district court to award liquidated double damages against employers who violate the FLSA. 29 U.S.C. Sec. 216(b); Walton, 786 F.2d at 308, 310. However, the district court may choose not to award liquidated damages where the employer shows that it acted in good faith with reasonable grounds to believe that its actions did not violate the FLSA. 29 U.S.C. Sec. 260; Walton, 786 F.2d at 308-12; see also EEOC v. Madison Community Unit. Sch. Dist., 818 F.2d 577, 586 (7th Cir.1987). The employer bears a substantial burden in showing that it acted reasonably and with good faith. See Kinney v. District of Columbia, 994 F.2d 6, 12 (D.C.Cir.1993). It is easier for a plaintiff to receive liquidated damages under the FLSA than it is to extend the statute of limitations for FLSA claims, a feat which the plaintiffs have already accomplished. Walton, 786 F.2d at 312; EEOC, 818 F.2d at 586. We review the district court's determination of the facts relevant to this issue for clear error and the district court's application of law to the facts de novo. See Walton, 786 F.2d at 308.
 
 
 26
 The defendants argue that they had a good faith, reasonable belief that the plaintiffs were not entitled to the FLSA's overtime provisions because there has been no authoritative determination in this circuit that police officers with the rank of sergeant are nonexempt employees under the FLSA. Each defendant testified that he believed that the plaintiffs were not covered by the FLSA. And, defendants point out, at least one case from another circuit has upheld a district court's finding that similar plaintiffs were not covered by the FLSA. Shockley v. City of Newport News, 997 F.2d 18, 26-28 (4th Cir.1993).
 
 
 27
 However, the defendants' subjective beliefs do not amount to proof of good faith unless they were reasonable. The defendants had been advised by their legal staff that employees who were docked pay could not be exempt managerial employees. We have already decided that this memorandum, combined with evidence that showed that the plaintiffs were subject to being docked for partial day absences, provided a sufficient basis for a jury to conclude that the defendants acted willfully for purposes of deciding which statute of limitations to apply. Similarly, but not congruently, see Walton, 786 F.2d at 308-12, that evidence provided a sufficient basis for the district court to find that the defendants did not act with good faith. The memo shows that the defendants were at least aware that the plaintiffs may have been covered by the FLSA. And Steven Schnorf, CMS's director, though he indicated that he spoke with CMS's attorneys about the FLSA's general applicability to CMS employees, refused to describe his conversations with CMS's attorneys on these matters. The defendants failed to show how they took steps to be more certain of plaintiffs' status. The lack of such an inquiry indicates a lack of good faith in complying with the responsibilities imposed by the FLSA. See 29 C.F.R. Sec. 790.15; Bratt v. County of Los Angeles, 912 F.2d 1066, 1072 (9th Cir.1990), cert. denied, 498 U.S. 1086, 111 S.Ct. 962, 112 L.Ed.2d 1049 (1991) (noting that, in order to establish good faith, a defendant must "prove that it had an honest intention to ascertain what the [FLSA] requires and to act in accordance with it."). Moreover, the September 5, 1991 change in the regulations, without a corresponding inquiry by the defendants, did not rectify defendants' lack of good faith. The defendants did not present evidence to establish that they held a good-faith, reasonable, though inaccurate, belief that the plaintiffs were not covered by the FLSA. The district court did not err in awarding liquidated damages.
 
 
 28
 III. Whether the District Court Abused Its Discretion in
 
 
 29
 Awarding Legal Fees and Costs to the Plaintiffs
 
 
 30
 The FLSA directs the courts to award reasonable attorneys' fees and costs to victorious plaintiffs. 29 U.S.C. Sec. 216(b). The amount of the fees and costs is subject to the district court's discretion, and we review for abuse thereof. Purcell v. Seguin State Bank & Trust Co., 999 F.2d 950, 961 (5th Cir.1993).
 
 
 31
 The plaintiffs requested $96,213.75 in attorneys' fees. They based their figure on a rate of $225.00 per hour for the partner who prosecuted this case and performed 80% of the work, Jac Cotiguala. They also showed that Cotiguala worked nearly 412 hours. The district court reduced the hours Cotiguala worked by 15% and the compensable rate by one third. The defendants say the fees are still too high and that the district court did not account for the plaintiffs' failure to win all the damages they sought. The plaintiffs argue that the fees are too low, that the district court improperly and arbitrarily cut the market rate to reflect the court's perception of what the fees would have been had the work been done by a large firm with many associates, who, doing the bulk of the "mundane" work, would rate lower hourly fees.
 
 
 32
 In calculating reasonable attorneys' fees, the district court should first determine the lodestar amount by multiplying the reasonable number of hours worked by the market rate. Eddleman v. Switchcraft, Inc., 927 F.2d 316, 318 (7th Cir.1991); Henry v. Webermeier, 738 F.2d 188, 193 (7th Cir.1984). The court may then discount the total fee award based on various factors. See, e.g., Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974).
 
 
 33
 While plaintiffs' success is important to the calculation of the proper amount of attorneys' fees, Purcell, 999 F.2d at 961, and courts may adjust attorneys' fees downward to reflect results far below expectations, Burnley, 730 F.2d at 141, failing to obtain every dollar sought on behalf of his clients does not automatically mean a lawyer's fees should be reduced. Partington v. Broyhill Furniture Indus., 999 F.2d 269, 273 (7th Cir.1993). The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case. Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)). Here, the plaintiffs sought relief from the jury on one theory of liability; whether the plaintiffs were hourly employees or were exempt from the FLSA. The plaintiffs won on this theory, but the jury concluded that they had not proved all of the damages they claimed. This does not necessarily mean that the lawyers are entitled to less fees; it merely means that the lawyers aimed higher than they hit, which, we have stated, is a sound tactic. Partington, 999 F.2d at 273-74. Moreover, as was problematic for the appellants in Partington, the defendants do not argue that Cotiguala could have done significantly less work without jeopardizing the claims he did win. Nor have they suggested that any specific amount of work can be pegged to the failed damages claims only, or that pursuing damages for pre- and post-shift work was frivolous. Given the overall success of the plaintiffs in this case, we do not believe that the district court abused its discretion in not adjusting the attorneys' fees downward based on the plaintiffs' failure to recover 100% of their claimed damages.
 
 
 34
 The district court did abuse its discretion, however, in adjusting the attorney's compensable hourly rate below what the evidence showed was the going market rate for his services. We have previously found that "the market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." Id. The district court noted that the plaintiffs had provided evidence supporting Cotiguala's claim that the market rate in Chicago for labor law attorneys with Cotiguala's experience was $225.00 per hour.
 
 
 35
 Moreover, plaintiffs presented the only evidence of the market rate in the record. Yet, the district court determined that Cotiguala was not entitled to the Chicago market rate because, had a large Chicago law firm done the work, associates with lower rates would have done much of the research, drafting of pleadings, and routine telephone calls to the client that Cotiguala did here. The result would have been an overall lower fee. The court chose to allow Cotiguala $150.00 per hour because it was midway between what Cotiguala could have charged in the market and what he charged for his paralegal's work ($75.00 per hour). However, the district court made this determination without hearing evidence, other than Cotiguala's supporting affidavits, to determine what a total similar fee in a large firm would be.
 
 
 36
 The uncontested evidence showed that the market would support a rate of $225.00 per hour; the district court's determination that this was really not so went beyond the record and into speculation. The district court may not reduce the established market rate by some factor that it believes accounts for differences between large firms and small firms. Lawyers of common expertise and experience in the same market are entitled to the same rate.
 
 
 37
 Accordingly, we find that the district court abused its discretion in reducing the uncontested market rate and VACATE the district court's award of attorneys' fees. The plaintiffs are entitled to attorneys' fees in the amount of $81,787.50, which is the product of the number of hours awarded, 350, multiplied by the market rate of $225.00 per hour.
 
 
 38
 We must also adjust the district court's award for costs. The district court erred in awarding the total costs ($2800) plaintiffs expended on hiring an accountant to calculate plaintiffs' damages. The accountant testified at the trial, and the court qualified him as an expert witness. He was, therefore, an expert witness. Congress has authorized courts to tax some types of litigation costs to the losing parties, and this authority includes witness fees. 28 U.S.C. Sec. 1920(3). But witness fees are limited to $40.00 per day of attendance at the trial. 28 U.S.C. Sec. 1821. In Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), the Supreme Court held that these statutes define the full extent to which federal courts may shift litigation costs without additional express statutory authority to go further.
 
 
 39
 Plaintiffs contend that, in West Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 92, 111 S.Ct. 1138, 1144, 113 L.Ed.2d 68 (1991), the Supreme Court modified Crawford to allow accountant fees to be included, without limit, as recoverable general costs of litigation where a statute that serves as a basis for a plaintiffs' recovery authorizes the court to tax the losing party with the winner's costs. However, while that case noted another case that allowed recovery of fees paid to accountants that did not testify at the trial, the general proposition for which Casey stands is that expert witness expenses may not be calculated as part of attorneys' fees or general litigation costs except as allowed by specific provisions of fee-shifting statutes. In Gray v. Phillips Petroleum, 971 F.2d 591, 594 (10th Cir.1992), the Tenth Circuit applied Casey and found that the FLSA fee-shifting provisions did not provide the explicit statutory authority for expert witness fees to be counted as attorneys' fees or other costs. We agree that this is the proper statutory construction of the FLSA fee-shifting provision. It provides that winning plaintiffs are entitled to reasonable attorneys' fees and the costs of the action, but says nothing specific about expert witness fees. 29 U.S.C. Sec. 216(b).
 
 
 40
 The plaintiffs argue that this is an inefficient arrangement that may allow for behind the scenes game-playing with expert research and actual testimony. We can do nothing about that here, however. This is Congress' ken. We therefore VACATE the district court's award of plaintiffs' total requested costs for their accountant. Plaintiffs are limited to recovering $40.00 per day of their expert witness accountant's attendance at the trial.
 
 
 41
 We REMAND the case to the district court for the calculation of expert witness costs and attorneys' fees consistent with this opinion and AFFIRM the district court in all other respects.
 
 
 
 [1]
 The defendants contend that, because the plaintiffs are police officers, essentially all rules violations are significant. This is not necessarily so. If, as the testimony suggested, the plaintiffs could be docked for any rules violations, then they might have been docked, for example, for tardiness, rude behavior, or gambling on their own time, violations not necessarily connected to "safety rules of major significance." See Klein, 990 F.2d at 286. And, even if no discipline for attending non-CMS court hearings or rules violations ever occurred, it is enough, despite defendants' assertion to the contrary, that it could have. Id
 
 
 [2]
 Conversely, the defendants bear the burden of proving good faith when the court considers whether to award liquidated double damages. See infra at 1254