Emma J. CONNOLLY, Plaintiff,

v.

NATIONAL SCHOOL BUS SERVICE, INC. and Scot Industries, Inc. Defendants.

No. 96 C 6060.

United States District Court, N.D. Illinois, Eastern District.

Feb. 10, 1998.

Ernest Thomas Rossiello, Melinda Higgins Brom, Elena M. Dimopoulos, Ernest T. Rossiello & Associates, P.C., Chicago, IL, for plaintiff.

Clare E. Connor, Tom H. Luetkemeyer, Hinshaw & Culbertson, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiff, Emma Connolly, has moved for an award of $97,135.85 in costs and attorneys' fees from defendant National School Service, Inc. (NSB) pursuant to 42 U.S.C. § 2000e–5(k), under which a district court, "in its discretion, may allow the prevailing

party ... a reasonable attorney's fee ... as part of the costs" in a Title VII action. This discretion is "appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Dunning v. Simmons Airlines, Inc.,* 62 F.3d 863, 872 (7th Cir. 1995).

The parties in this case settled the matter for $10,000 on the day of trial. Plaintiff claims that she is therefore a prevailing party and entitled to costs and fees because she achieved success on "a significant issue in litigation which achieves some of the benefit sought in bringing the suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A plaintiff who has settled a case instead of winning at trial may still be considered a prevailing party, as "one may prevail by persuading one's adversary to retire from the field." *Stomper v. Amalgamated Transit Union,* 27 F.3d 316, 317 (7th Cir.1994). A prevailing plaintiff is one who has achieved some measure of success on the merits and can point to a resolution that has changed the legal relationship between itself and defendant. *Farrar v. Hobby,* 506 U.S. 103, 109–11, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Hewitt v. Helms,* 482 U.S. 755, 760–61, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987).

■ Defendant, National School Bus Service, Inc., objects to any award of fees and costs to plaintiff. While acknowledging the case law regarding awards of attorneys' fees in Title VII cases, defendant asserts that under certain circumstances, including those in this case, any award of fees is unjust. *Hensley,* 461 U.S. at 429. First, defendant asserts that plaintiff is a not prevailing party because she failed to succeed on the merits. *Farrar,* 506 U .S. at 109–11. To determine if a plaintiff who settles her case is indeed a prevailing party, the Seventh Circuit has developed a two-part test: "1) whether the lawsuit was causally linked to the relief obtained, and 2) whether the defendant acted gratuitously, that is, the lawsuit was frivolous, unreasonable or groundless." *Fisher v. Kelly,* 105 F.3d 350, 353 (internal citations and quotes omitted).

■ In support of its contention that plaintiff is not a prevailing party, defendant argues that the settlement she ultimately received was so far below her demand for damages that it is clear that she did not succeed on the merits of her claim. Defendant claims that the $10,000 it paid plaintiff in settlement was no more than the nuisance value of the case. The cost of settlement was simply less than that of trial and post-trial motions, which defendant estimated at more than $25,000, making settlement "gratuitous" on its part. *Fisher,* 105 F.3d at 353. However, plaintiff responds that her retaliation claim survived the court's ruling on defendant's motion for summary judgment and that the case was about to proceed to trial. This case differs in that respect from *Fisher,* where the parties had not proceeded to summary judgment and the defendant made an offer of judgment that plaintiff accepted. *Id.* The court found that the defendant had settled the case fairly early in the litigation without regard to the merits of the case. *Id.* The settlement here occurred after defendant filed a motion for summary judgment and the court ruled that the issue of retaliatory discharge would proceed to trial. In that sense, the settlement here was not gratuitous on defendant's part even though it was calculated to avoid additional litigation fees—all settlements are.

■ Even if a party prevails, the relief obtained may be technical or de minimis to the extent that attorneys' fees are unwarranted. To determine if this is so, the Seventh Circuit has set out a three-factor test that requires the court to consider: 1) the difference between the judgment recovered and the recovery sought; 2) the significance of the legal issue on which plaintiff prevailed; and 3) the public purpose served by the litigation. *Johnson v. Lafayette Fire Fighters Assn.,* 51 F.3d 726, 731 (7th Cir.1995). The "most critical factor" is the difference between the recovery sought and the award. *See Farrar,* 506 U.S. at 113 (award of $1 where plaintiffs requested $17 million). In her complaint, plaintiff requested compensatory damages of $30,000, reinstatement and attorneys' fees. Her pretrial memorandum also contained a $10,000 punitive damages demand. Compared to this demand, a $10,-

000 settlement is, according to defendant, de minimis. Defendant points out that it denied liability, it did not change its relationship with plaintiff, she was not reinstated and the company did not amend any company policy as a result of plaintiff's allegations or complaint. Neither party presented new legal theories in this case, making the public purpose served by the lawsuit minimal.

Plaintiff responds to defendant's criticisms by pointing out that although the settlement amount was $10,000, the parties also agreed that this amount did not include attorneys' fees, which the parties would litigate. Although the settlement figure was moderate, it was not tremendously out of proportion to the demand and it is above the nominal amounts courts have considered de minimis. *See Bolden v. Carter*, 1997 WL 534342 (N.D.Ill.) (court denied attorneys' fees where plaintiff received $1 in nominal damages).

The court finds that plaintiff received more than a de minimis settlement amount.

■ Next is the task of determining a reasonable fee. The starting point of this calculation is to arrive at a "lodestar figure." To do so, the court multiplies the hours reasonably spent on the case by each attorney's reasonable hourly rate. *Bankston v. State of Illinois*, 60 F.3d 1249, 1255 (7th Cir.1995). The fact that the amount of attorneys' fees requested is disproportionate to a settlement or judgment does not necessarily indicate that a fee is unreasonable. *Dunning*, 62 F.3d at 873, n. 13. The underlying principle of this policy is that a judgment for plaintiff furthers federal public policy and deters similar conduct in the future. *Id* . The court may then adjust the lodestar figure according to the plaintiff's level of success. *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir.1995). Plaintiff's costs and attorneys' fees are summarized as follows:

| | | |
|---|---|---|
| Ernest T. Rossiello, 81.3 hours @ $320/hour | = | $26,016.00 |
| Elena M. Dimopoulos, 261.8 hours @ $220/hour | = | $57,596.00 |
| Melinda H. Brom, 8.10 hours @ $190/hour | = | $ 1,539.00 |
| Annice Kelly, 1.6 hours @ $220/hour | = | $ 352.00 |
| Paralegal Time, 47.25 hours @ 102.50/hour | = | $ 4,843.12 |
| Expenses of Suit | = | $ 6,789.73 |
| Total | = | $97,135.85 |

■ Defendant objects to all of plaintiff's counsels' hourly rates, as well as those of the paralegal on the case, stating that they are excessive and above market rates. *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1310 (7th Cir.1996) (award of fees is based on market rate for services rendered). To counter the requested hourly fees, defendant has submitted affidavits from labor and employment attorneys, including defendant's counsel, stating that attorneys with comparable experience in Chicago charge much lower hourly rates than those requested.

As to Ms. Dimopoulos, defendant notes that she graduated from law school in 1995

and therefore had less than one year experience when this lawsuit was filed in June 1996. Defendant has submitted affidavits supporting its contention that an hourly rate of $220 is excessive for such an inexperienced attorney. Defendant claims that Ms. Dimopoulos' inexperience was apparent in her overly aggressive manner of conducting discovery and reluctance to call opposing counsel to resolve discovery disputes. Also, defendant notes that many of Mr. Rossiello's time entries were for evaluating or reviewing Ms. Dimopoulos' work, indicating that a more senior attorney still needed to supervise her.[1] Defendant claims that the market simply would not bear the rates plaintiff's counsel

---

1. Defendant states that although it recognizes the need for attorneys to strategize in conferences, the time it opposes appears to have been only for reviewing Ms. Dimopoulos' work, not for discussing the case.

and paralegal claim they are due, especially considering that the complexity of the legal issues in this case was limited.

Plaintiff rejoins that counsel should be awarded their *own* market rates, not what the court considers a "fair" rate. *Pressley v. Haeger*, 977 F.2d 295, 299 (7th Cir.1992). She claims that courts in this district have approved the hourly rates for the attorneys and paralegals at Rossiello & Associates. Although it is accurate that an attorney who commands high rates in the market is entitled to that rate in a fee petition, Mr. Rossiello's evidentiary support for his hourly rate is not the rate he charges his clients or the rates of attorneys with similar experience but the rate he has been awarded in other cases. While those cases certainly provided guidance and must not be dismissed as having no significance, the court finds that they are distinguishable. First, many of the cases plaintiff cites as support and attaches as exhibits are merely orders awarding fees and contain no explanation of how the court arrived at the hourly rate. *See* Order dated October 24, 1996, in *Emmel v. Hondo, Inc.*, 93 C 2290 ($305/hour); Order dated August 27, 1996, in *Barnett v. Sandpiper I, Inc.*, 95 C 7547 ($305/hour); and Order dated March 31, 1997, in *Baker v. Purcell & Wardrope*, 96 C 6892 ($320/hour). In *Le Torneau v. Pan American Financial Services, Inc.*, entered August 27, 1997, Judge Plunkett did award the hourly rates requested here but specifically noted that while defendant's counsel had opposed these rates as excessive, they had not provided any evidence that the rates exceeded the current market rate. In contrast, defense counsel here has submitted multiple affidavits from attorneys with similar experience stating that they do not charge nearly as much as Mr. Rossiello requests and that the market rates in Chicago for attorneys with his level of experience range from $225 to $275/hour. This is persuasive evidence that the hourly rates requested exceed market rates. It is especially

true given the fairly typical nature of this Title VII claim, as indicated by the fact that an entry-level associate conducted most of the litigation. The court finds that the record clearly does not support a standard market rate of $320 and $220 per hour respectively for plaintiff's counsel. Specifically, an hourly rate of $220 for a first or second year attorney is patently high.[2] The cases that the court finds most similar to the instant one, and therefore most persuasive, is *Shea v. Galaxie Lumber & Construction Co.*, 1997 WL 51655 (N.D.Ill.), where Judge Leinenweber awarded Mr. Rossiello $285/hour and Ms. Dimopoulos $125/hour in a case involving the Fair Labor Standards Act. The court will grant Mr. Rossiello an hourly rate of $285. As to Ms. Dimopoulos, the affidavits submitted indicate that attorneys with similar experience in Chicago bill at $105 to $125 an hour. However, Ms. Dimopoulos was the attorney with primary responsibility for handling this case, including appearances in court, preparing the motion for summary judgment and arguing motions in limine. For that reason, the court will allow an hourly rate of $140, which is a higher market rate than normal for an attorney with her experience but reflects her increased responsibility. The court will allow Ms. Brom, licensed in 1992, an hourly rate of $160, and Ms. Kelly, licensed in 1991, an hourly rate of $175. The current market rate for the paralegal service offered averages $75/hour and the court will allow that rate.

■ Now that the court has an hourly rate, it must multiply this by the reasonable number of hours expended on the case. Defendant objects to some of the tasks that plaintiff's counsel has included in the petition.[3] For example, Ms. Connor submitted an affidavit detailing Ms. Dimopoulos' failure to telephone her regarding scheduling depositions or to hold mandated 12(k) conferences prior to bringing motions to compel. The court noted in one of the hearings on a motion to compel that counsel should have

---

2. The court is puzzled by plaintiff's statement that Ms. Dimopoulos has more experience in Title VII cases than does Ms. Connor, who was admitted to the bar nine years before Ms. Dimopoulos. Ms. Connor billed her client in this matter at an hourly rate of $185.

3. In response, Mr. Rossiello voluntarily withdrew one entry totaling .2 hours.

used the telephone to discuss dates with opposing counsel instead of faxing unilaterally chosen deposition dates. It also granted defendant's motion to vacate the order granting plaintiff's motion to compel because the depositions at issue in that motion had been scheduled and Ms. Connor had informed Ms. Dimopoulos that she considered the motion moot and would not be appearing in court. The court finds that had Ms. Dimopoulos telephoned Ms. Connor regarding deposition dates in lieu of the more than seven hours spent drafting and appearing in court on motions to compel, it would have taken less than two hours. Therefore, the court will reduce Ms. Dimopoulos' hours by 5.5.[4] *See Spegon v. The Catholic Bishop of Chicago,* 1997 WL 797676 (N.D.Ill.) (court awarded only the hours that counsel would have been expended on the matter had they cooperated with defendant).

■ Defendant also objects to tasks Ms. Dimopoulos performed that it claims should have been completed by clerical staff. These include 1 .2 hours of bates-stamping documents;. .3 for picking up and filing inspection pictures; and .5 for reviewing the phone book for addresses. The court agrees. Although defendant claims that there are two entries of .1 hours that appear to be unrelated to this case, the court reviewed all entries on the cited dates and all appear to involve this matter. The 41 hours Ms. Dimopoulos billed for drafting the response to the motion for summary judgment and the Rule 12N statement are labeled excessive in light of the $220 hourly rate Ms. Dimopoulos requests. Because the court reduced that hourly rate to a level it finds commensurate with Ms. Dimopoulos' experience and level of responsibility, it does not find these hours excessive. The total time deducted from Ms. Dimopoulos' petition is: 7.5 hours.

Defendant has also objected to a number of Mr. Rossiello's entries that it states involve supervising Ms. Dimopoulos' work. It alleges that this contradicts plaintiff's assertion that Ms. Dimopoulos has much more knowledge regarding Title VII than attorneys with a similar number of years experience. As noted, the court did not grant the $220 hourly rate although it did grant a rate higher than the average for attorneys at her level. Because the court is giving Ms. Dimopoulos a higher hourly rate despite her fairly recent graduation from law school, the court will strike only the hours that clearly involve reviewing fundamental aspects of litigation. However, not every entry defendant has listed involves such review as opposed to normal discussion or strategizing between two attorneys on a case. The court therefore denies fees for Mr. Rossiello's entries dated 12/5/96; 12/11/96; 12/19/96;[5] 1/16/97; 2/28/97; 3/3/97; and 4/29/97. This 1.4 hours plus the .2 hours from 9/21/97 that Mr. Rossiello voluntarily withdrew totals 1.6 hours that will be deducted.

■ As to Ms. Brom, defendant objects to 1.2 hours spent reviewing a case that Ms. Dimopoulos also reviewed on the same day. The court does not find it inappropriate that attorneys assigned to a case read newly released and relevant case law. Although defendant has encouraged the court to "make its own determination" as to the rest of Ms. Brom's activities, it is inappropriate for the court to sua sponte reduce the award if defendant has not made specific objections to it. *Hutchison v. Amateur Electronic Supply, Inc.,* 42 F.3d 1037, 1048 (7th Cir.1994).

■ In addition to objecting to the paralegal's hourly rate, which the court has already reduced, defendant states that many of the paralegal's entries involve clerical work and that should have been assigned to an employee "at the next rung lower on the pay

---

4. Not wishing to appear inconsistent, the court wishes to note that this holding does not conflict with its oft-stated view in open court that it encourages counsel to bring motions to compel if opposing counsel is delaying discovery. Here, the court found that Ms. Connor had not so delayed and that a simple telephone call would have sufficed for the parties to iron out their scheduling conflicts. Also, Ms. Dimopoulos in-

formed the court that the parties had held the required 12K meeting. Actually, the parties had never spoken by telephone but had only faxed dates or cancellations to each other.

5. The court notes that some of these entries could also be stricken according to its ruling as to the motions to compel.

scale ladder." *People Who Care*, 90 F.3d at 1315. The court will strike the time spent copying documents and reviewing and revising timesheets for a reduction of 10.5 hours.

 Both Ms. Dimopoulos and Mr. Rossiello billed for time spent in court on the motions in limine. Defendant claims that only Ms. Dimopoulos actually argued the motions and that only she should be allowed this time. Although the court does not generally reimburse more than one attorney for appearing in court on a hearing, it will allow multiple attorneys (and a paralegal) to appear for motions in limine and other matters involving trial preparation on the day of trial. The court will also allow the hours Mr. Rossiello billed for preparing the motion for attorneys fees before the parties actually settled. Although anticipatory, these hours were eventually necessary and there is no indication that they are duplicative of hours spent on the fee petition after the parties actually did settle.

All of this leads the court to the lodestar amount in this case.

| | | |
|---|---|---|
| Ernest T. Rossiello, 79.7 hours @ $285/hour | = | $22,714.50 |
| Elena M. Dimopoulos, 254.3 hours @ $140/hour | = | $35,602.00 |
| Melinda H. Brom, 8.10 hours @ $160/hour | = | $ 1,296.00 |
| Annice Kelly, 1.6 hours @ $175/hour | = | $ 280.00 |
| Paralegal Time, 36.75 hours @ $75/hour | = | $ 2,756.25 |
| Expenses of Suit | = | $ 6,789.73 |
| | | |
| Total | = | $69,438.48 |

 Once the lodestar amount is calculated, the court may adjust the award according to plaintiff's level of success. *Hensley*, 461 U.S. at 439. Although the court rejected defendant's arguments as to whether plaintiff's recovery was de minimis, it finds that they are applicable to determining how the court will adjust the lodestar figure to reflect the level of success achieved. "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have [her] attorneys fees reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. Plaintiff's success here was quite minimal, making a fully a compensatory award inappropriate. She received a fairly insignificant monetary award compared with the damages requested. On the day of trial, defendant was unwilling to raise its settlement offer other than to let the court decide attorneys' fees. Defendant denied liability and refused to reinstate plaintiff. The agreement to provide a letter verifying dates of employment and hourly wage is not indicative of outstanding success, especially when defendant refused to include any statement that plaintiff's performance was satisfactory.

Although plaintiff emphasizes that the settlement included attorneys' fees, it is more accurate to say that it included only an agreement to litigate the fees issue. Defendant specifically rejected plaintiff's proposal that they litigate only the amount of attorneys' fees to be awarded and not whether the court should award them at all. It explicitly retained the right to argue to the court that plaintiff should receive no attorneys' fees. Because of plaintiff's limited success, the court finds that the requested award be reduced by half, bringing the lodestar figure to $34,921.74.

 Defendant has offered another reason to reduce the award of attorneys' fees. Courts may deny or reduce attorneys' fees when the prevailing plaintiff unreasonably delayed the process, which defendant claims is the case here. *Vocca v. Playboy Hotel of Chicago*, 686 F.2d 605, 608 (7th Cir.1982). In *Vocca*, the Seventh Circuit upheld the district court's denial of attorney's fees where plaintiff's counsel refused an ear-

ly settlement offer that was only $1,538 less than eventually agreed upon because he felt that the defendant could simply afford to pay more than the plaintiff was entitled to. Defendant asserts that plaintiff's counsel refused to timely discuss settlement and prolonged the litigation only to increase the fees in the case. When plaintiff's counsel is prepared to try a case over the fee issue, as defendant claims was clearly the case here, it is an abuse of the public policy behind awarding fees and should not be sanctioned by the court.

This court observed firsthand plaintiff's counsel placing his interest in attorneys' fees over his client's interests. As Mr. Rossiello stated to the court in explanation of his denial to accept settlement on behalf of his client, "this case is all about fees." The court witnessed Mr. Rossiello's explicit rejection of settlement for his client because of the issue of attorneys' fees; his refusal to conduct settlement discussions with his client present as the court explicitly ordered, giving the court the clear impression that Mr. Rossiello did not want his client accepting a settlement that was not in his interests; and his peremptory dismissal of the court's law clerk, who was directed to speak to plaintiff and mediate between the parties during negotiations, which the court has found to be a successful method of facilitating settlement. After conducting negotiations between the parties during more than one settlement conference, there is no doubt in the court's mind that this litigation was prolonged and fees increased because of plaintiff's counsels' interests and not because of plaintiff's interests.

That this delay in settlement served only counsels' interests, and not plaintiff's, is evident when asking what plaintiff gained during the extended negotiations. The answer is nothing. It was never the actual settlement amount pertaining to the merits of the

case that was unacceptable to plaintiff's counsel, the sticking point was the amount of attorneys' fees due. Plaintiff ultimately received little more than she would have if her counsel accepted this defendant's original offer. Counsel fared much better.[6]

Although the court could in its discretion deny any award when it finds that counsel has unnecessarily prolonged litigation, it finds that further reducing the fee award is also appropriate. Considering that defendant made its first offer of $12,500 to plaintiff in March 1997, before the motions for summary judgment were filed and before the parties engaged in pretrial preparation, the court will reduce the $34,921.74 award by a third for a total award of $23,281.16. After reviewing the progression of the litigation in this case, the merits of plaintiff's case, her level of success and her counsels' conduct, the court finds that this award is reasonable.

ORDERED: For the foregoing reasons, the court grants plaintiff attorneys' fees in the amount of $23,281.16.

---

**6.** According to the terms of the contingency agreement plaintiff signed with Rossiello & Associates, she was entitled to nothing after the case settled and indeed owed the firm money. Under the agreement, plaintiff agreed to pay a flat fee of $7,500 and one-third of any recovery or settlement. She also assigned her statutory right to attorneys' fees. Plaintiff's counsel has indicated

it required plaintiff to pay the flat fee of $7,500 but waived the remainder. Had counsel not done so, plaintiff would have owed $10,833, more than the total settlement amount. Therefore, as a result of this litigation, plaintiff received $2,500. Rossiello & Associates has received $7,500 and requested $97,135.85.