**Everett D. JACKSON, Plaintiff–Appellee,**

**v.**

**GO–TANE SERVICES, INC., Defendant–Appellant.**

No. 02–1468.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 5, 2002.

Decided Jan. 21, 2003.

Before COFFEY, RIPPLE, and MANION, Circuit Judges.

### ORDER

On August 30, 1999, Plaintiff Everett D. Jackson ("Jackson") sued his employer,

Go–Tane Services, Inc. ("Go–Tane"), under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), for failure to compensate him with overtime pay. Go–Tane argued that Jackson, who worked for Go–Tane as a Car Wash "manager," from 1996 to 1999, qualified as a bona fide "executive" under FLSA, and that Jackson was thus exempt from the applicable overtime requirements. After a bench trial, the district court found that Jackson did not meet FLSA's requirements for "executive" status because: (1) management was not his primary duty and (2) he did not regularly and customarily supervise the equivalent of two full-time employees. 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.1(f). Accordingly, the district court entered judgment against Go–Tane, in the amount of $9,960, which included both actual and liquidated damages. We affirm.

## I. Facts

During the relevant time period, from August 30, 1997 to July 8, 1998,[1] Go–Tane owned and operated 20 gasoline stations and one car wash facility (the "Car Wash") in the Chicago area.[2] Each of Go–Tane's service stations had an on-site manager, and Plaintiff Everett Jackson was the "manager" at the Car Wash. Jackson was paid on a "salary" basis, earning $345 for each 48–hour week, and $360 for each 54–

hour week. Jackson also received benefits, such as medical care.

Although Jackson was the "manager" of the Car Wash, in title, Don Adamcyk, the General Manager of all of Go–Tane's facilities, testified that he (Adamcyk) actually "overs[aw] *everything*" at the Car Wash. Tr.[3] at 37 (emphasis added). Therefore, while Jackson took care of customer complaints and performed basic administrative responsibilities with respect to the Car Wash attendants, including scheduling matters as well as training and discipline, when it came to making hiring and firing decisions, and setting the pay rates for new hirees, Jackson had little independent authority. Jackson testified that he made "recommendations" regarding employment matters, but that he had to seek Adamcyk's authorization before setting an employee's rate of pay, or hiring or firing an employee. *Id.* at 148–50. Adamcyk confirmed, testifying that, in setting pay rates, Jackson "had to run [his decisions] by me." *Id.* at 37.[4] Adamcyk further admitted that in *"any* instance when Jackson wanted to terminate someone," Jackson would first approach Adamcyk. *Id.* at 94 (emphasis added).

Jackson testified that, in spite of the fact that he held the title of "manager," he nonetheless performed a significant

---

1. The instant suit was filed on August 30, 1999. Because the district court found that Go–Tane's violation of FLSA was not "willful," Jackson's FLSA claim was subject to a two-year statute of limitations. 29 U.S.C. § 255(a). Therefore, the relevant time period begins on August 30, 1997, and ends on July 8, 1998, when Jackson ceased to be a Car Wash "manager" for Go–Tane.

2. The status of the managers at Go–Tane's gasoline service stations is not at issue in this case.

3. Throughout this order, references to the trial transcript are denoted "Tr." References to

the district court's rulings from the bench, namely, its December 12, 2001 ruling as to liability, its January 29, 2002 ruling as to willfulness, and its February 20, 2001 ruling as to liquidated damages, are denoted Go–Tane's Ex. A, Go–Tane's Ex. B, and Go–Tane's Ex. C, respectively (with references to page numbers within the hearing transcripts denoted as "Tr.").

4. During the period Jackson was employed by Go–Tane, under Adamcyk's supervision, Adamcyk remembered the name of only one employee whom Jackson had fired without his prior consultation. *See* Tr. at 96.

amount of *non-managerial* tasks. According to the trial record, an estimated *95%* of Jackson's work time was spent doing tasks identical to those performed by the Car Wash attendants. *Id.* at 150. Jackson's non-managerial duties included sweeping, window cleaning, gardening, emptying the garbage, cleaning the car wash tunnels, and booth cleaning. *Id.* at 148. Jackson's testimony regarding his non-managerial responsibilities was corroborated by the testimony of Edward Paige, another Car Wash attendant. Paige stated, on direct examination, that Jackson frequently swept the premises, emptied garbage cans, did window washing, planting, shoveling, worked the cashier register, and guided cars through the wash tunnel. *Id.* at 138–40. Paige further explained that "[he and Jackson] worked [car wash attendant-type tasks] together ... [w]e worked together, whatever we had to do, you know, me and him." *Id.* at 141–42.

Paige was one of a number of attendants hired by Go–Tane to assist Jackson at the Car Wash. At any one time, there were around three to five attendants on the work schedule. *Id.* at 130. The attendants were assigned a total of 138 hours per week in the off-season and 200 hours per week during peak season; however, they did not always work a full schedule.[5] According to the time sheets, the *total weekly work hours of all of the other employees* under Jackson's supervision exceeded 80 hours per week only 67% of the time during the relevant time period. Go–Tane Ex. 4, Tr. at 5. And, while Adamcyk maintained that Jackson had been directed to

staff the Car Wash with at least two other full-time employees at all times, Tr. at 41–43, Jackson testified that Adamcyk had in fact told him keep the Car Wash attendants' hours down. Tr. at 156.

## II. Procedural Background

On August 30, 1999, Jackson filed this action in the district court, seeking money damages in connection with Go–Tane's alleged violation of FLSA's overtime requirements.[6] After conducting a bench trial, the trial judge, on December 12, 2001, ruled that based upon the totality of the evidence presented, including testimony, documents and other exhibits, Jackson did not qualify as an "exempt" employee under FLSA, and thus Go–Tane was guilty of violating the applicable overtime requirements by failing to compensate Jackson for overtime work as required under FLSA. 29 U.S.C. § 207(a). Go–Tane's Ex. A, Tr. at 6. Jackson, however, failed to establish that this alleged violation was "willful," so the district court applied a two-year (as opposed to three-year) statute of limitations to Jackson's claim. *See* 29 U.S.C. § 255(a). Go–Tane's Ex. B, Tr. at 2–3.

In light of the evidence presented at the hearing on the damages phase, on February 20, 2000, the trial court ruled that Jackson was entitled to liquidated damages, based on its finding that Go–Tane had not met the burden of demonstrating that its violation was done in "good faith." Go–Tane's Ex. C, Tr. at 2. Accordingly, the

---

**5.** The attendants did not work a full shift of hours if business was slow (inclement weather), or if they were sick or on vacation. Tr. at 54, 128.

**6.** Jackson filed the instant action on behalf of himself and "other Plaintiffs similarly situated." Complaint ¶ 1. Because Go–Tane made a Rule 68 Offer of Judgment to the party-

plaintiffs, and because they accepted this offer, the district court entered judgment in favor of the plaintiffs, and thus their claims did not proceed to trial. *See Jackson v. Go–Tane Services, Inc.,* No. 99–C–5686 (N.D. Ill. Sept. 24, 2001) (entry of judgment in favor of the party-plaintiffs). Their claims are therefore not at issue in this appeal.

trial court entered judgment in favor of Jackson in the amount of $9,960 ($4,980 actual damages plus $4,980 liquidated damages). *Id.* at 3. Go–Tane appeals from the court's finding of liability, as well as its decision to grant liquidated damages.

## III. Analysis

### A. "Bona fide executive" determination

FLSA's overtime regulations require employers to compensate an employee who works more than forty hours per week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). Such "time and a half" compensation requirement does not apply, however, to "any employee in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). In claiming the "bona fide executive" exemption as an affirmative defense, an employer bears the burden of establishing that the employee in question is properly classified under such exception. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974). Such exemptions are narrowly construed by the courts, *Mitchell v. Lublin, McGaughy & Assoc.,* 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959), and are applied only where it "plainly and unmistakably comes within the statute's terms and spirit" to deny the employee overtime. *Arnold v. Ben Kanowsky Inc.,* 361 U.S. 388, 390, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). Following a bench trial, we review the district court's findings of fact for clear error. *Donais v. United States,* 232 F.3d 595, 598 (7th Cir. 2000).

Under FLSA, an employer may demonstrate that the "executive" exemption applies by satisfying either a six-part test ("long test") specified in 29 C.F.R. § 541.1, or a three-part test ("short test") detailed in 29 C.F.R. § 541.1(f). Where, as here, it is undisputed that the employee in question earns more than $250 per week, the short test applies. *See* 29 C.F.R. § 541.1(f). Under the short test, Go–Tane must prove that: (1) plaintiff is paid on a salary basis, (2) plaintiff's *primary duty* consists of the management of the employer's enterprise, and (3) plaintiff's job duties require him to customarily and regularly direct the work of two or more other full-time employees. *Id.*

■ After considering the evidence presented during the trial, the court found that Go–Tane had failed to prove that Jackson was a "bona fide executive" under FLSA, because it had not demonstrated by a preponderance of the evidence that Jackson's "primary duties" also consisted of the management of the Car Wash. *See* Go–Tane's Ex. A, Tr. at 4.[7] On appeal, Go–Tane argues that, considering Adamcyk's testimony that Jackson was responsible for "hiring any employees, terminating any employees, coming up with the rate of pay per the employees ... [and generally] running and operating th[e Car Wash] ...", Tr. at 35, the district court erroneously held that Jackson was not a bona fide executive. Go–Tane also credits the testimony of one of the Car Wash attendants, that Jackson was "in charge" of the Car Wash, as establishing that Jackson qualified as a "manager" under FLSA's exemption. Tr. at 125 (Paige's testimony that Jackson gave the attendants direction as to "what to do" at the Car Wash).

---

7. The district court also found that Go–Tane had not met its burden of demonstrating the exemption on the additional basis that Go–Tane had "failed to establish that Jackson customarily managed two or more full time equivalent employees." Appellant's Exhibit A, Tr. at 4–5. For this Court's discussion of such holding, see *infra* note 6.

When determining whether any employee qualifies as a bona fide "executive" under the FLSA, a court must review whether an employee's "primary duty" is management. The "primary duty" determination must be made on a case-by-case basis, 29 C.F.R. § 541.103, but "it may be taken as a good rule of thumb that primary duty means the major part, or *over 50 percent* of the employee's time." *Id.* (emphasis added). Other factors that may be considered in the "primary duty" analysis include: (1) the relative importance of the managerial duties as compared to other types of duties, (2) the frequency with which the employee exercises discretionary powers, (3) the employee's relative freedom from supervision, and (4) the relationship between the employee's salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. *Id.; see also Vela et al. v. City of Houston et al.,* 276 F.3d 659, 677 (5th Cir.2001).

In this case, there was a wealth of evidence presented at trial that, although Go–Tane conferred upon Jackson the title of Car Wash "manager," Go–Tane, in practice, entrusted Jackson with very few responsibilities and had him operate as a glorified Car Wash attendant. As a Car Wash attendant, Edward Paige, testified at trial, aside from time spent doing scheduling and handling money at the end of the day, Jackson "did basically the same duties [as a Car Wash attendant]." Tr. at 143. Paige noted that Jackson regularly: (1) swept the Car Wash premises, (2) emptied garbage cans, (3) cleaned the Car Wash booth's windows, (4) did landscaping work, (5) shoveled snow, (6) worked the cashier register, and (7) guided cars into the car wash. Tr. at 138–40. Paige further testified that he and Jackson "worked ... together" doing these Car Wash attendant-type tasks. Tr. at 141.

Moreover, there was unrefuted evidence that such mundane janitorial duties and non-managerial tasks comprised *well over 50%* of Jackson's work hours. Jackson himself testified that he spent *95% of his time at work* performing the *same tasks* as the Car Wash attendants. *See* Tr. at 150. Adamcyk, for his part, was unable to estimate the amount of time that Jackson spent doing attendant-type tasks versus the time spent doing managerial work, Tr. at 91, and further testified that he knew of no documents that would help determine such time allocation. Tr. at 92. Thus, according to Jackson's unrefuted testimony at trial, the amount of time that Jackson generally spent on managerial duties fell well below the 50% benchmark set forth under 29 C.F.R. § 541.103.

To the extent that Jackson performed *any* managerial responsibilities, no evidence was presented establishing that such duties were overwhelmingly important as compared to the regular Car Wash attendant tasks that Jackson performed 95% of the time. Jackson was not *compensated* for such "managerial" tasks over and above what the regular Car Wash attendants were paid, given that, as the trial judge found, Jackson's "salary ... work[ed] out to $6.66 per hour," and was thus "only slightly higher than Paige's wage rate of $6.00 an hour, as a[ Car Wash] attendant." Go–Tane's Ex. A, Tr. at 4.

And, as far as the extent of Jackson's discretionary power was concerned, the district court expressly found that, "[w]hile Adamcyk *tried to give the impression* that Jackson had great independent authority," the documents and other testimony "concerning hiring and firing, and granting raises clearly show[ ] that Jackson had to clear any such action with Adamcyk." Go–Tane's Ex. A, Tr. at 5 (emphasis added). Given that we have

frequently stated in our opinions that the "trial judge is in the best position to judge the credibility of witnesses who offer conflicting testimony," *United States v. Woods*, 233 F.3d 482, 484 (7th Cir.2000), such a credibility determination "can virtually never be clear error." *Anderson v. City of Bessemer*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Moreover, in this case, the district court's ruling and decision to discredit Adamcyk's testimony that Jackson had broad independent authority was well supported by the evidence presented at trial. Jackson's testimony, and even certain other testimony of Adamcyk, clearly established that Jackson had *very little* independent discretion in executing any management decisions related to the operation of the Car Wash. Jackson testified that, with regards to hiring and firing decisions, he always made *recommendations* to Adamcyk about who to hire or terminate, and had no authority to make such decisions on his own.

Tr. at 149. He further testified that he was without authority to set other employees' rates of pay. *Id.* Moreover, as Adamcyk himself admitted, when setting employees' pay rates, Jackson "had to run it by me." Tr. at 37. Adamcyk also testified that "Jackson ... approached me *in any instance* when he wanted to terminate someone." Tr. at 94 (emphasis added). Accordingly, the record supports the trial judge's conclusion that Jackson was in fact vested with very little meaningful, independent authority, if any, in particular with respect to employment decisions at the Car Wash.

Because the record supports the court's conclusion that Jackson's primary duty at the Car Wash was *not* management, and that Go–Tane thus failed to establish a necessary requirement under 29 C.F.R. § 541.1(f),[8] this Court hereby affirms its conclusion that Jackson did not meet the requirements of the "bona fide executive."[9]

8. According to the trial court, Go–Tane also failed to demonstrate that Jackson regularly and customarily directed the work of two or more full-time employees, as required under the second prong of the "short test." 29 C.F.R. § 241.1(f). We need not reach this issue, because, as we have previously stated, Go–Tane failed to establish the first necessary requisite under the short test. Nonetheless, if we were to reach the issue, we would affirm the district court's finding on the basis that, as established by Go–Tane's own work records, Go–Tane Ex. 4, the Car Wash attendants that Jackson supervised worked the requisite "full-time" schedule (i.e., a total of 80 hours a week) only 67% of the time that they were under Jackson's supervision. *See* Go–Tane's Ex. A, Tr. at 5. Moreover, according to Jackson's testimony, Adamcyk instructed him to keep the attendants' hours down, Tr. at 156, presumably to minimize labor costs. We agree with the reasoning in *Secretary of Labor v. Daylight Dairy Products, Inc.*, 779 F.2d 784, 788 (7th Cir.1985), that, where the supervised employees work "full time" only 67% of the time over the relevant time period, such amount of supervision falls short of the "regular and customary" supervision of two full-

time employees that is required under Section 241.1(f).

9. Jackson also argues that the "sole charge" exception, set forth under 29 C.F.R. § 541.113, does not apply in the instant case, on the basis that Go–Tane has "waived" the sole charge "defense" under 29 C.F.R. § 541.113. Jackson's Br. at 14–15. The trial judge ruled that Go–Tane could not avail itself of Section 541.113's sole charge exemption, because it never raised the exemption in its pre-trial order. Appellant's Ex. A, Tr. at 5. It is indeed well-settled that the pre-trial order controls the course of the action at trial. Fed. R.Civ.P. 16. *See also Clark v. Martinez*, 295 F.3d 809, 815 (8th Cir.2002) (" 'a party may be barred from advancing theories that are not identified in the pretrial order.' "). But we also note that Go–Tane could not have benefitted from the "sole charge" exemption in any case, because the "sole charge" exemption, 29 C.F.R. § 541.113, merely provides an exception to one of the requirements set forth under the so-called "long test," 29 C.F.R. § 541.1(e), which, as discussed above, does not apply in the instant case. Moreover, by

### B. Damages

Under FLSA, liquidated damages are mandatory, unless the trial court determines that the employer, while acting in good faith, reasonably believed that its conduct was consistent with the law. *See* 29 U.S.C. § 260. An employer seeking to avoid imposition of liquidated damages under FLSA "bears a *substantial burden* in showing that it acted reasonably and with good faith." *Bankston v. State of Ill.*, 60 F.3d 1249, 1254 (7th Cir.1995) (emphasis added). We review the district court's factual determinations regarding the liquidated damages issue for clear error, and its application of the law *de novo.* *Id.*

█ In this case, the district court noted that plaintiff was an "unskilled worker whose main dut[y] was washing cars." Go–Tane's Ex. C, Tr. at 2. As the trial judge went on to state, Jackson had only "minor clerical duties that did not approach that of a manager." *Id.* On the basis of such facts, the trial judge concluded that "defendant ... failed to prove by a preponderance of the evidence that it acted in good faith." *Id.* at 2.

In urging us to reverse the district court's award of liquidated damages, Go–Tane argues that "[a]t no time did the district court find, nor did Jackson even attempt to prove, that Go–Tane's action in this case was a deliberate violation of the FLSA." Go–Tane's Br. at 24. In so arguing, Go–Tane fails to recognize that the burden in this instance was on Defendant–Appellant *Go–Tane* to convince the Court that its actions were reasonable and in good faith—not on Jackson. And, as the trial court correctly found, Go–Tane failed to meet its burden in this case.

Given that the record establishes that Jackson spent the *overwhelming majority* of his time—95% of his workday—performing the duties of a Car Wash attendant, and that he was vested with *little to no independent authority* in the performance of his limited managerial duties, it is difficult to ascertain how Go–Tane could have believed that Jackson qualified as a "bona fide executive" under FLSA. Moreover, in light of the extremely limited nature of Jackson's management responsibilities, even if Go–Tane *did* believe that Jackson was exempt from FLSA's overtime requirements, such belief was unreasonable under the ruling case law and the circumstances set forth in this record. Accordingly, we affirm the district court's award of liquidated damages.[10]

The judgment of the district court is AFFIRMED.

---

failing the "primary duty" requirement of the short test, Go–Tane also fails a necessary requirement of the long test. *See* 29 C.F.R. § 541.1(a). Therefore, this Court need not consider whether Jackson meets any of the other requirements of the long test, 29 C.F.R. § 541.1(e), or, for that matter, whether Jackson is exempted from one of the "long test" requirements by virtue of the "sole charge" exemption. 29 C.F.R. § 541.113.

10. Jackson claims that, if we were to reverse the liquidated damages award, he would be entitled to pre-judgment interest. *See* Jackson's Br. at 22. Because we affirm the district court's decision to award liquidated damages, we need not consider Jackson's argument regarding pre-judgment interest.