151 F.3d 1033
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Joanne LETOURNEAU and Tracey Neuman, Plaintiffs-Appellees,
v.
PAN AMERICAN FINANCIAL SERVICES, INC., Defendant-Appellant.
 No. 97-3543.
 United States Court of Appeals, Seventh Circuit.
 Argued April 28, 1998.
Decided Aug. 21, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 96 C 619 Paul E. Plunkett, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. KENNETH F. RIPPLE, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 After prevailing in their suit under the Fair Labor Standards Act, the plaintiffs petitioned for attorney's fees. The plaintiffs requested an hourly rate of $320 for the lead attorney and rates of $220 and $190 respectively for two associates. The plaintiffs supported their request with affidavits from two of their lawyers, detailing the experience and prior fee awards for the lead attorney and only one of the two associates. Pan American Financial Services objected to the rates, but did not counter with any evidence of what the market rate was for comparable work, so the district court awarded the plaintiff the requested rates. Pan American now appeals.[1] The rates awarded by the district court push the envelope for such a straightforward case. However, the deferential standard of review we must apply constrains us to affirm the awards given to Ernest Rossiello, the lead attorney and Elena Dimopoulos, one of the associates. But the district court's award to Melinda Higgins Brom constitutes an abuse of discretion in light of the inadequate factual showing put forward by the plaintiff. We therefore vacate the fee award in part and remand for further proceedings.
 
 Facts
 
 2
 Joanne LeTourneau sued Pan American Financial Services, Inc. (Pan American), her former employer, for failure to pay overtime as required by the Fair Labor Standards Act, 29 U.S.C. §§ 207(a), 215(a)(2) (FLSA). After the district court denied summary judgment to the plaintiff, Pan American submitted an offer of judgment for $6100, which was the full amount to which the plaintiffs would have been entitled under the FLSA, including costs.
 
 
 3
 After the judgment was entered, the plaintiffs moved for $23,017 in attorney's fees. The fees were based on a rate of $320/hour for the lead attorney, $220/hour and $190/hour respectively for two associates, and $102.50/hour for paralegal time. In support of the request, plaintiffs submitted affidavits from the lead attorney, Ernest Rossiello, and one associate, Elena Dimopoulos. The affiants asserted that the plaintiffs' law firm worked solely on a contingency basis, but that the rates sought were market rates for attorneys with equivalent experience. Plaintiffs also submitted fee awards counsel had received in other cases. Some of the other cases involved Title VII claims, and some involved FLSA claims combined with other claims. The defendant's response did not include an affidavit contesting plaintiffs' counsel's assertion of the market rate. Instead, the defendant submitted two cases in which counsel had received lower hourly rates than those requested in this case.
 
 
 4
 The district court used plaintiff's requested hourly rates in calculating the fee award because the defendant failed to show that plaintiffs' requested rates exceeded market rates. The district court deducted 13.4 hours of requested time as excessive and awarded plaintiff's counsel $18,729 in fees. The defendant appeals, arguing that the hourly rates applied were excessive.
 
 Analysis
 
 5
 The FLSA mandates that courts award a "reasonable attorney's fee" to prevailing plaintiffs. See 29 U.S.C. § 216(b) ("The court in such action shall ... allow a reasonable attorney's fee to be paid by the defendant...."). While the award of fees is mandatory, the district judge has "wide latitude" in determining the amount of the fee. Strange v. Monogram Credit Card Bank of Ga., 129 F.3d 943, 945 (7th Cir.1997). Therefore, this court reviews a district court's award of attorney's fees under the FLSA for abuse of discretion. See Bankston v. Illinois, 60 F.3d 1249, 1255 (7th Cir.1995). Because determining attorney's fees involves factual issues, this review is "highly deferential." Merriweather v. Family Dollar Stores of Indiana, Inc., 103 F.3d 576, 583 (7th Cir.1996). The district judge is in the best position to determine the worth of attorneys practicing before him. Moreover, employing a highly deferential standard of review avoids an extensive second round of litigation over attorney's fees. See Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).
 
 
 6
 Generally, when calculating attorney's fees, a district court will determine a "lodestar amount by multiplying the reasonable number of hours worked by the market rate." Bankston, 60 F.3d at 1255. Pan American correctly argues that the burden of proving the market rate is on the plaintiff. See McNabola v. Chicago Transit Auth., 10 F.3d 501, 518 (7th Cir.1993). However, once an attorney provides evidence establishing his market rate, the defendant has the burden of demonstrating why a lower rate should be awarded. See People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1313 (7th Cir.1996). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." McNabola, 10 F.3d at 519 (citation omitted). Evidence of an attorney's market rate includes evidence of rates other attorneys in the area charge paying clients for similar work, and evidence of fee awards the attorney has received in similar cases. See People Who Care, 90 F.3d at 1310, 1312.
 
 
 7
 In the district court, LeTourneau provided affidavits from Rossiello and one of his associates that contained assertions of familiarity with the Chicago market, and a listing of fees the two had in other cases, including some pure FLSA overtime cases, some mixed Title VII and FLSA cases, and some pure Title VII cases. Rossiello's affidavit also included his assertion that the rates he requested were in line with what other attorneys in Chicago with his experience charged for their time. Pan American did not counter Rossiello's statements about the market rate in Chicago for similar attorneys, but instead highlighted two cases Rossiello had not cited, in which Rossiello and his associates had been awarded hourly rates below the rates requested in this case. Pan American argues that the district court abused its discretion by refusing to consider these cases, noting that the district court rejected the defendant's objection to the hourly rates because Pan American had "neither offered an affidavit to counter Mr. Rossiello's attestation that $320 is the market rate for attorneys with 25 years of experience in Title VII and FLSA litigation nor shown that the rates sought for the associates and paralegal in this case are above the market rate."
 
 
 8
 While the district court did not mention the cases cited by the defendant, the record does not suggest that the district court ignored evidence of fee awards in other cases as does the record in People Who Care. In that case, we found the district judge to have abused his discretion when he had dismissed fee awards from other cases as "non-binding." See People Who Care, 90 F.3d at 1312. However, in this case, the district court mentioned that the plaintiffs' fee petition "attest[ed] in detail to both [Rossiello's] experience and the fee awards he has received in similar cases." This shows that the district court was aware that fee awards from prior cases are relevant in the determination of a proper hourly rate. Moreover, we believe that the district court's rejection of the defendant's argument relates more to the defendant's failure to produce any evidence that plaintiff's properly supported rate requests were above the market than to any requirement that Pan American support its argument with a counteraffidavit. Indeed, the district court clearly considered the defendant's arguments, because the district court reduced the number of hours requested pursuant to the defendant's objection. Therefore, the record does not suggest abuse of discretion on this ground.
 
 
 9
 Pan American next argues that the plaintiffs did not present enough evidence to support hourly rates at the level awarded by the district court. Pan American argues that the cases cited by the plaintiffs to establish market rate are not similar to this case, and thus the hourly billing rate should be reduced to reflect the awards Rossiello and his associates have received in FLSA overtime pay cases. Pan American argues that the cases involving Title VII claims are dissimilar because they involve more complex issues than straight FLSA cases. Rossielo submitted evidence of fee awards in three straight FLSA overtime cases in which his associates received a rate of $160/hour and in which he received between $270 and $280/hour. Rossiello also provided evidence of fee awards in straight Title VII cases and mixed FLSA/Title VII cases in which he received up to $345/hour.[2]
 
 
 10
 Rossiello argues that non-FLSA overtime pay cases are relevant as evidence of opportunity costs--fees that Rossiello and his associates could have made had they not taken this case. See, e.g., Cooper v. Casey, 97 F.3d 914, 920 (7th Cir.1996); Gusman v. Unisys Corp., 986 F.2d 1146, 1150-51 (7th Cir.1993). However, we have noted that while our cases "properly emphasize opportunity cost in the determination of a reasonable attorney's fee ....[,] the reasonable fee is capped at the prevailing market rate for lawyers engaged" in FLSA work. Cooper, 97 F.3d at 920. Thus, if Rossiello's opportunity costs, as measured by his recoveries in Title VII cases, exceed the prevailing market rate of lawyers engaged in FLSA work, his recovery is limited to the prevailing market rate.
 
 
 11
 Cooper is instructive on this issue. In Cooper, prisoners prevailed in a 42 U.S.C. § 1983 suit against prison guards. Plaintiff's attorneys were from a major downtown Chicago law firm and asked for reimbursement at the rates that they billed their paying clients. The defendants countered with evidence that "a competent civil rights lawyer could have been hired to represent the plaintiffs at a lower rate." Id. at 920-21. This court vacated the award of fees and remanded the case for further proceedings to determine the proper rate. Id. at 921.
 
 
 12
 Unlike the defendants in Cooper, the defendant here has not presented any evidence on the market rate for FLSA practitioners. Pan American offered to the district court only two cases involving prior fee awards to Rossiello. But one of these cases was from 1991, and thus was not very probative of Rossiello's current rate. The one other case provided by the defendant for Rossiello's rate falls in the same range as the cases that Rossiello provided. While the plaintiffs did not provide evidence (other than Rossiello's assertion) on the market rate for comparable FLSA practitioners either, they did provide several recent comparable FLSA overtime case fee awards that the district court could have used to establish an hourly rate. The three cases, all from 1995, show that Rossiello had obtained fee awards at hourly rates of $270-280 for similar work in 1995. Given the prior awards in addition to Rossiello's uncontested assertions about market rates, the district court did not abuse its discretion by accepting the plaintiffs' requested rate for Rossiello. Even if the universe of similar cases is restricted to pure FLSA cases, the $320/hour requested is close enough to the 1995 award rates to justify an affirmance. See Ustrak v. Fairman, 851 F.2d 983, 987 (7th Cir.1988) ("interest in uniform determination" of fees not so great as to require "microscopic appellate scrutiny").
 
 
 13
 Plaintiffs' showing for the first of Rossiello's two associates is also sufficient under the deferential standard of review we must apply. Plaintiffs asked for and received $220 per hour for Elena Dimopoulos. Rossiello asserts that he bills Dimopoulos' time between $220-250/hour. Dimopoulos indicates that she has received rates at this level in two 1997 Title VII cases. Rossiello provided evidence that Dimopoulos obtained $220/hour for her services in a 1997 Title VII case and $165/hour in a 1995 Title VII case. The defendants submitted a 1997 mixed Title VII/FLSA case in which she had received only $125/hour. Plaintiffs' showing on Dimopoulos' rate is sufficient for the judge to have relied on in ruling in their favor. The defendants have provided no evidence that $220 is an above market rate for associates with similar credentials. Therefore, the fee award for Ms. Dimopoulos is not an abuse of discretion.
 
 
 14
 In contrast, the support for Ms. Brom's $190 rate is very, very thin. The only evidence in the record relating specifically to Brom's market rate is a single assertion about her in Rossiello's affidavit: Rossiello "believes the rate of $190 per hour for MELINDA HIGGINS BROM is reasonable. [Mrs. Brom resigned from Mr. Rossiello's firm on February 28, 1997 to assume permanent maternity leave.]" Neither side identified any cases that could be used to set a market rate for Brom, nor did the plaintiffs describe her credentials. The defendant argues that the plaintiffs' assertion is not enough, because an attorney "must do more than merely request an hourly rate; he must present evidence to establish that the requested rate is his actual billing rate." People Who Care, 90 F.3d at 1311. Inexplicably, the plaintiffs' briefs do not mention the award of fees for Brom's work, and thus the plaintiffs do not argue that the fee was reasonable.
 
 
 15
 While the question is close, the district judge abused his discretion in basing his fee decision on Rossiello's statement alone. Rossiello's statement about Brom does not assert that $190/hour is a market rate for someone with Brom's credentials and experience, but only asserts that he thinks the rate is "reasonable." Rossiello's statement is self-serving--the fees are really going into his pocket--and is totally uncorroborated. Neither side identified any cases that could be used to set a market rate for Brom, nor did the plaintiffs describe her credentials. In short, there is no evidence in the record that the district court could have relied on in setting a market rate for Brom.
 
 
 16
 Although we have approved the $320/hour rate for Rossiello and $220/hour rate for Dimopoulos, by no means does this result signify our approval or endorsement of such high rates in simple FLSA cases. However, given our extremely deferential standard of review, the rates are not so unreasonable or unsupported as to justify vacating the entire fee award. Therefore, we affirm the fee award for Rossiello and Dimopoulos, but vacate the fee award to Brom and remand for further proceedings. The parties shall bear their own costs of appeal.
 
 
 17
 AFFIRMED IN PART, VACATED AND REMANDED IN PART.
 
 
 
 [1]
 We deny fees on appeal
 
 
 [2]
 Rossiello also submitted an affidavit that he was familiar with the Chicago market and that the requested rates were commensurate with market rates. We think a district court should be very careful about accepting the representations of a lawyer as to how much the lawyer thinks his own services are worth. Rossielo's affidavit is somewhat undercut by his failure to point to a straight FLSA case in which his fees were so high