Kenneth **SPEGON**, Plaintiff–Appellant,

v.

### The CATHOLIC BISHOP OF CHICAGO, Defendant–Appellee.

No. 98–1240.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1998.

Decided April 27, 1999.

Ernest T. Rossiello (argued), Rossiello & Associates, Chicago, IL, for Plaintiff–Appellant.

Maureen A. Murphy (argued), Legal Services of Archdiocese of Chicago, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS *, BAUER, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Following the termination of his employment at St. Agnes Church in Chicago Heights, Illinois ("the Parish"), Kenneth Spegon filed suit against the Catholic Bishop of Chicago ("the Diocese") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law, 820 ILCS 105 *et seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS 115 *et seq.*, seeking back overtime pay, liquidated damages, compensatory damages, punitive damages, and injunctive relief. After accepting an offer of judgment from the Diocese in the amount of $1100.00, Spegon petitioned the district court for $7280.70 in attorneys' fees and costs. The court granted Spegon's fee petition in part, awarding Spegon's counsel $752.70. Spegon now appeals, challenging the amount of fees and costs awarded.

* This opinion was in press on April 24, 1999, the date of the Honorable Walter J. Cummings' death.

## I. History

In January 1996, the Parish hired Kenneth Spegon as its maintenance person. Spegon was employed by the Parish in that capacity until January 1997, when the Parish terminated his employment for poor performance. In February 1997, Spegon brought suit against the Diocese alleging that, during the time he was employed at the Parish, he had been insufficiently compensated for his overtime hours. Spegon claimed that the Parish had paid him only his regular hourly rate, rather than the statutorily required time-and-a-half rate, for those hours he worked in excess of forty hours a week in violation of the FLSA and the Illinois wage and hour laws. Spegon also alleged that he had been discriminatorily discharged from his employment for expressing his opposition to his employer's practice of not paying him a proper overtime wage.

From the outset of this case, the Diocese acknowledged that it had paid Spegon only straight time for any overtime hours he may have worked. At the first hearing before the district court, the counsel for the Diocese stated:

We are not disputing the overtime, that $350. We checked the time sheets. And as soon as we were served with the lawsuit, I called [Spegon's counsel] and asked why nobody called us before filing. The parish business manager did not realize that she had to pay time and a half. She paid him straight time for the overtime hours, did not realize it. So it's easy to rectify the problem.

Instead, the parties disputed the amount of back overtime pay the Diocese owed Spegon. Based on its review of Spegon's time sheets, the Diocese calculated that Spegon was due as little as $48.60 but no more than $426.75 in overtime compensation. Spegon believed he was owed $1781.25 of unpaid overtime. Based on this calculation, Spegon made a $6600 settlement demand, which included more than $3600 in attorneys' fees.

When the parties next appeared before the district court, the Diocese once again protested that neither Spegon, nor his attorneys, contacted the Diocese to notify it of its failure to pay the appropriate overtime rate prior to the filing of this lawsuit. The Diocese proffered that it was unreasonable now to ask the Parish to pay $6600, including the $3600 in attorneys' fees, for an inadvertent several hundred dollar mistake. Acknowledging the Diocese's dilemma, the district court suggested that the Diocese make an offer of judgment and dispute the attorneys' fees with Spegon's lawyers at a later date.

In light of the court's suggestion, the Diocese made an offer of judgment in the amount of "$1,100 plus court costs and a reasonable attorney's fee to be determined by the court." Spegon accepted the Diocese's offer and subsequently filed his motion for attorneys' fees. Spegon requested an award of $7280.70 in fees and costs, including more than $2000 for fees and costs associated with the filing of the fee petition itself. Specifically, Spegon sought fees for twenty hours of lead attorney Ernest Rossiello's time at $320 per hour, 0.6 hours of associate Elena Dimopoulos's time at $220 per hour, and 5.1 hours of a paralegal's time at $102.50 per hour along with costs in the amount of $236.20. In support of his fee request, Spegon submitted affidavits from Rossiello and Dimopoulos both of whom attested that the requested hourly rates were the appropriate market rates for their respective services and that all of the time and costs incurred were necessarily and reasonably expended in connection with the prosecution of Spegon's claim. Spegon also submitted billing statements indicating the date on which legal services were rendered, a very short explanation of the tasks performed, and the amount of time spent on each task or combination of tasks.

The Diocese raised numerous objections to Spegon's fee request arguing that the request was unreasonable both in terms of the rates and hours asserted and in light

of the limited success that Spegon achieved in the case. The Diocese also argued that the $150 filing fee for the complaint in this case should be disallowed because it was not necessary for the lawsuit to have been filed in order to resolve the issues giving rise to the lawsuit.

Based largely on the objections the Diocese raised to the requested fees and costs, the district court disallowed all but 4.6 hours of Rossiello's time and 0.5 hours of the paralegal's time as unreasonable and unnecessary. The court also reduced the requested hourly rates to $280 per hour for Rossiello and $90 per hour for the paralegal to arrive at an initial fee award amount of $1333.[1] The court then reduced this amount by fifty percent to reflect Spegon's limited success in the case. The district court also disallowed the $150 filing fee but otherwise awarded Spegon all requested costs ($86.20), resulting in the total fee award of $752.70, approximately ten percent of the amount requested by Spegon. Spegon now appeals, challenging the amount of fees and costs awarded.

## II. STANDARD OF REVIEW

District courts have wide discretion in determining the appropriate amount of attorneys' fees and costs; therefore, our review of such determinations is limited to a highly deferential abuse of discretion standard. *See Bankston v. Illinois,* 60 F.3d 1249, 1255 (7th Cir.1995); *Estate of Borst v. O'Brien,* 979 F.2d 511, 514 (7th Cir.1992). This deferential standard of review "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "Not only is the trial court in a much better position than the appellate court to make this determination, but neither the stakes nor the interest in uniform determination are so great as to justify microscopic appellate

scrutiny." *Ustrak v. Fairman,* 851 F.2d 983, 987 (7th Cir.1988).

## III. ANALYSIS

The FLSA directs courts to award reasonable attorneys' fees and costs to prevailing plaintiffs. *See* 29 U.S.C. § 216(b) ("'The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Spegon is a prevailing plaintiff by virtue of the judgment entered in his favor in this case. Thus, the primary issue before this Court is whether the district court abused its considerable discretion in determining what constitutes a "reasonable" attorneys' fee for this case.

Our review of the reasonableness of a district court's fee determination is guided by the Supreme Court's decision in *Hensley. See Bankston,* 60 F.3d at 1255–56 (applying the *Hensley* framework to fee award determinations under the FLSA). Under *Hensley,* "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433, 103 S.Ct. 1933; *see also Bankston,* 60 F.3d at 1255. This product is commonly referred to as the "lodestar." The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. Furthermore, the district court has an obligation to "exclude from this initial fee calculation hours that were not 'reasonably expended'" on the litigation. *Id.* at 434, 103 S.Ct. 1933. The district court may then increase or reduce the modified lodestar amount by considering a variety of factors, *see id.* at 434–35, 103 S.Ct. 1933, the most important of which is the "degree of success obtained," *id.* at 436, 103 S.Ct. 1933; *see also Bankston,* 60 F.3d at 1255–56. With these prin-

---

1. The district court also reduced Dimopoulos's hourly rate to $125 per hour.

ciples in mind, we turn to whether the district court abused its discretion in determining the fee award in this case.

## A. Whether the District Court Abused Its Discretion In Determining the Number Of Hours Reasonably Expended On the Litigation

### 1. *Hours Expended on the Merits of Spegon's Claim*

■ In assessing Spegon's challenge to the district court's reduction in hours, we emphasize that the views of the district court are given great deference. *See Ustrak,* 851 F.2d at 987. "By virtue of its familiarity with the litigation, the district court certainly is in a much better position than we to determine the number of hours reasonably expended." *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 519 (7th Cir.1993). When reducing the number of hours requested, the district court should provide "a concise but clear explanation of his reasons." *Tomazzoli v. Sheedy,* 804 F.2d 93, 97 (7th Cir.1986) (citation and internal quotation marks omitted). In the present case, the district court has provided a sufficient explanation, and we cannot say that the court's reduction of hours was unreasonable.

Spegon submitted a motion for attorneys' fees to the district court seeking compensation for 10.8 hours of Rossiello's time, 0.6 hours of Dimopoulos's time, and 5.1 hours of the paralegal's time expended in pursuing the merits of his overtime claim.[2] The fee request was accompanied by billing statements and affidavits from both the attorneys involved in the case affirming that the requested hours were necessarily and reasonably expended in connection with the prosecution of Spegon's claim.

In response to Spegon's motion, the Diocese submitted its own motion requesting that the district court award only a fraction of the hours sought by Spegon. The Diocese argued that the filing of the lawsuit and all the subsequently incurred hours were largely unnecessary. The only issue in dispute, the Diocese submitted, was the amount of overtime compensation to which Spegon was entitled—the resolution of which involved a simple calculation using the time sheets that Spegon himself had prepared for each day of his employment. Accordingly, the Diocese asserted that an award of two hours of Rossiello's time was appropriate in this case to reflect the amount of time that was truly necessary to resolve this case. The Diocese also argued that all of Dimopoulos's time and most of the paralegal's time should be disallowed because the time was spent working on administrative rather than legal matters.

The district court accepted the Diocese's unchallenged representation that Spegon's claim could have been resolved without the filing of a lawsuit and concluded that the majority of hours expended by Spegon's counsel in pursuing Spegon's claim were unnecessary. As a result, in determining the number of hours "reasonably expended" by Rossiello, the district court reduced the number of hours requested to three, reasoning that "within three hours, an attorney of Rossiello's experience and skill could have met with Spegon, assessed his claim, called the Bishop and negotiated a settlement."[3] In addition, the district

---

**2.** There is some minor disagreement between Spegon and the district court as to the number of Rossiello's hours spent preparing the merits of the case as opposed to preparing the fee request. Spegon claims 13.7 hours spent on the merits and 6.3 hours on the fee request. The district court calculated that 10.1 and 9.9 hours had been approved respectively. Our review of counsels' billing statements indicate that 10.8 hours of Rossiello's time can be properly attributed to the merits and 9.2 hours to the fee request. Because it is not material to the determination of any issue on appeal, we will use our calculations.

**3.** The district court further reasoned that even if, it were to conclude that Rossiello's time was necessary in this case, it would be unwilling to accept that all the entries in his fee request were "accurate" or "reasonable" as the court found the fee request and the supporting affidavit of Rossiello to be inaccurate.

court disallowed all of the time requested by Dimopoulos on the basis that the tasks she performed were essentially administrative in nature—tasks that easily could have been performed by a full-time secretary. Similarly, the district court disallowed all but one-half hour of the paralegal's time based on the same rationale. On appeal, Spegon argues that the district court erred in reducing the number of hours requested by counsel and submits that all the hours requested were both necessary and reasonable.

 We first turn to the district court's conclusion that Rossiello reasonably expended only three hours in pursuing the merits of this litigation. In reaching this conclusion, the district court examined whether Rossiello exercised "billing judgment" in making his claim that the number of hours he submitted to the district court in his fee request was reasonable. *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (explaining that a fee applicant is expected to exercise "billing judgment" in deciding which hours are "properly billed to one's *adversary* pursuant to statutory authority"). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir.1998). In exercising "billing judgment," the Supreme Court emphasized that counsel for the prevailing plaintiff should "exclude from a fee request hours that are excessive, redundant, or *otherwise unnecessary*, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (emphasis added). Put another way, hours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party under a fee-shifting statute such as the FLSA. *Id.*

 Thus, whether a fee-paying client in Spegon's shoes would have expected counsel to contact the Diocese prior to filing suit is a permissible factor for the district court to consider in determining the reasonableness of the hours subsequently expended in pursuit of the litigation. In light of the limited amount of back overtime pay sought by Spegon and the hourly rates counsel asks this Court to award, it is not unreasonable to conclude that a fee-paying client in Spegon's situation would have expected his counsel to contact his employer prior to filing suit in order to assess the feasibility of a quick settlement, thereby maximizing the client's ultimate net recovery.[4] Furthermore, despite the opportunity both below and before this Court, Spegon has failed to ex-

---

However, because we conclude *infra* that the district court did not abuse its discretion by disallowing all but three of Rossiello's hours as "unnecessary" and, hence, not reasonably expended, we need not address the court's determination that the fee request was inaccurate.

4. Pointing to the district court's statement that it would not "reward the tactics of any attorney who chooses to file a lawsuit first and ask questions later," Spegon argues that the district court improperly construed the FLSA to contain a proviso that a plaintiff, or his counsel, contact his employer as a prerequisite or condition precedent to filing suit. Accordingly, Spegon submits that it was error for the district court to reduce the hours requested in this case on the basis that Spegon opted not to contact the Diocese to at-

tempt to reach a settlement prior to filing his lawsuit.

Contrary to Spegon's assertion, we do not believe the district court's comment can be construed as an attempt on its part to improperly impose a pre-suit notification requirement in FLSA suits. The decision not to contact the Diocese prior to filing Spegon's complaint did not preclude Spegon from maintaining his cause of action in the district court, nor did it necessarily bar him from recovering an attorneys' fee award in this case. Rather, the district court simply indicated that a plaintiff's decision to contact or not to contact an employer prior to filing suit is a factor the court can take into consideration in determining whether any subsequently billed hours are "necessary" and therefore "reasonably expended."

plain why the hours claimed by Rossiello were reasonably necessary to prove the Diocese's overtime violation (when the Diocese admitted from the outset of the litigation that it had inadvertently failed to pay the overtime) other than by baldly reasserting that all the hours billed were necessary and reasonable. Such a conclusory explanation may not serve to satisfy a fee applicant's burden of proving the reasonableness of the hours claimed. Thus, given our highly deferential standard of review in these cases, we conclude that the district court did not abuse its discretion in reducing the number of hours requested for Rossiello to three.

Nor do we believe the district court abused its discretion by disallowing all of Dimopoulos's time and nearly all of the paralegal's hours. As stated above, in determining the number of hours "reasonably expended" by counsel in the litigation, the court should ensure that counsel exercises "billing judgment." In so doing, the court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel "on tasks that are easily delegable to non-professional assistance." *Cf. Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir.1995) (reasoning that legal service rates are not applicable when an attorney provides services that could have been easily delegated to a non-professional). In the instant case, the district court disallowed all Dimopoulos's time on the basis that the services she provided in connection with this case were "neither reasonable or necessary." In fact, the court noted that most of Dimopoulos's time was expended on "simple administrative tasks that easily could have been performed by a full-time secretary." We agree. Dimopoulos's billing statements indicate that much of her time was spent updating her "case list" and calendar with the status of Spegon's case and holding office conferences with a paralegal regarding the paralegal's communications with the court's minute clerk. We seriously doubt these are the type of legal services an attorney would normally bill to paying client because they contribute little if anything toward furthering Spegon's interest in this case. Accordingly, we find no abuse of discretion by the court in disallowing all of Dimopoulos's time.

These same principles apply to a district court's determination of the number of hours "reasonably expended" by a paralegal. The relevant inquiry for requested paralegal fees is "whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir.1996). Accordingly, the district court should disallow time spent on what are essentially "clerical" or secretarial tasks. *Id.* In this case, the tasks for which Spegon's counsel sought an award of paralegal fees included organizing file folders, document preparation, and copying documents. The district court concluded that only one-half hour of the paralegal's time was for "reasonable and necessary administrative tasks that could not be performed by a secretary." Spegon offers no evidence to suggest that the court erred in reaching this conclusion. Because we afford great deference to the district court's determination that these sort of tasks do not justify the efforts of a paralegal, we find that the court did not abuse its discretion in reducing the requested number of hours for the paralegal.

### 2. Hours Expended on the Preparation of Attorneys' Fee Motions

Spegon also challenges the district court's determination of the number of hours "reasonably expended" in connection with the preparation of the fee request in this case. Spegon sought compensation for approximately nine hours of Rossiello's time in connection with the preparation of two attorneys' fee motions. The district court awarded only 1.6 hours, finding that

the number of hours requested by Spegon was "overly exaggerated" and the fee request was "inaccurate."

In determining the appropriate number of hours to award for the fee request in this case, the district court turned to our decision in *Ustrak*. In *Ustrak*, we were called upon to review whether the hours spent by the fee applicant in preparing its fee petitions were reasonably expended. *See* 851 F.2d at 987–88. One factor we considered in determining the reasonableness of those hours was the comparison between the hours spent on the merits and the hours spent on the fee petitions. *See id.* The plaintiff's attorneys in *Ustrak* devoted fifteen minutes to preparing their fee petition for every hour spent litigating the merits. *See id.* We found the amount of time and effort devoted by counsel to the pursuit of fees to be excessive and, this "reinforc[ed] our impression that lawyers litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue." *Id.* at 988. Accordingly, we disallowed two-thirds of the hours expended on the fee petitions and still considered that allowance a generous one in comparison to *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir.1988), "where the prevailing party submitted a bill for only 1.6 hours for the preparation of his request for an award of attorney's fees." *Ustrak*, 851 F.2d at 988.

In comparison, Rossiello spent approximately the same number of hours preparing the fee petitions as he requested in pursuing the merits of the case. If we considered the ratio of fifteen minutes worked on the fee petition for every hour worked on the merits to be "excessive" in *Ustrak*, we must agree with the district court that it is patently unreasonable for Rossiello (whose hours constituted the bulk of Spegon's requested attorneys' fee) to expend the same number of hours, or almost as many, on Spegon's fee petition as he expended on the merits of Spegon's case.

Nor can we say that the district court abused its discretion in reducing the hours requested to 1.6 hours. In arriving at that number, the court relied on *Kurowski*, which we held out in *Ustrak* as an example of a reasonable number of hours expended on fee request preparation. *See id.* Spegon argues it was improper for the district court to rely on *Kurowski* because the court made no indication that the time claimed in the instant case was comparable to the time claimed in *Kurowski*. This argument misses the point. The relevant inquiry is not how many hours the fee applicant requested to be compensated for in preparing the fee petitions. Rather, the relevant inquiry is whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits of the case. In *Kurowski*, the fee applicant was awarded approximately $14,-000 in attorney fees representing 140 hours of attorney time for which the applicant submitted a bill for only 1.6 hours' time to prepare the fee request. *See* 848 F.2d at 776. Spegon's counsel sought a total fee award of approximately $7000 representing roughly twenty-five hours of attorney and paralegal time. When viewed in this light, we cannot say that the district court abused its discretion in reducing the number of hours requested in connection with the fee request to 1.6 hours.

**B. Whether the District Court Abused Its Discretion In Determining Counsels' Hourly Rates**

After determining the number of hours "reasonably expended," the district court must determine a "reasonable hourly rate." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. The determination of an attorney's "reasonably hourly rate" is to be based on the "market rate" for the services rendered. *See People Who Care*, 90 F.3d at 1310. The burden of proving the "market rate" is on the fee applicant, *see McNabola*, 10 F.3d at 518–19; however, once the attorney provides evidence

establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded. *See People Who Care*, 90 F.3d at 1313.

■ An attorney's "market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Bankston*, 60 F.3d at 1256 (quoting *Partington v. Broyhill Furniture Indus.*, 999 F.2d 269, 273–74 (7th Cir.1993)). "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *People Who Care*, 90 F.3d at 1310 (citation omitted). However, if the district court is unable to determine the attorney's actual billing rate because, for example, the attorney has no fee-paying clients, then the district court should look to the next best evidence. *See id.* The next best evidence of an attorney's market rate includes evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases. *See id.* at 1310–12.

■ In this case, Rossiello claimed a market rate of $320 per hour for himself and $102.50 per hour for his paralegal.[5] In support of these rates, Rossiello submitted an affidavit in which he asserted that his law firm worked solely on a contingency basis, but that he was familiar with the Chicago market for attorneys' fees and it was his opinion that $320 was the market rate for an attorney with his experience. Rossiello's affidavit also contained a list of recent cases (only some of which involved FLSA claims) in which he claimed that he was awarded hourly rates ranging from

$270 to $345 per hour.[6] With respect to the requested paralegal rate, Rossiello asserted that the requested rate was commensurate with rates the paralegal had been awarded in prior cases.

In response, the Diocese argued that the requested rates should be reduced to reflect the rates Rossiello and his paralegal had been awarded in recent FLSA overtime cases. In advancing this argument, the Diocese relied on the fee awards identified in Rossiello's affidavit and argued that the requested rates should be reduced to reflect the hourly rates awarded to Rossiello and his paralegal in the pure FLSA overtime cases—which were no more than $280 and $90 respectively.

After considering the fee awards Rossiello had received in past FLSA cases, the district court concluded that the requested rates overestimated the market value of Rossiello and his paralegal's services and decided to award the rates it had awarded the two in a 1996 FLSA overtime case— $280 per hour for Rossiello and $90 per hour for his paralegal. *See Doden v. Plainfield Fire Protection Dist.*, No. 94–C–6294, 1996 WL 180073, at *2 (N.D.Ill. April 12, 1996). While acknowledging that these rates were awarded approximately a year-and-a-half ago, the court did not consider them to be below the current market rates for their respective services because when it awarded those rates it considered them to be on the "high" end.

■ Spegon first contends that the district court abused its discretion in reducing the requested hourly rates for Rossiello and his paralegal because it ignored his "uncontradicted" evidence that the market

---

5. Because we concluded above that the district court properly disallowed all of Dimopoulos's time, we need not address whether the court abused its discretion in reducing her requested hourly rate from $220 to $125.

6. Many of the cases for which Rossiello was awarded these rates involved Title VII claims or some combination of FLSA claims and Title VII claims. Our review of Spegon's initial fee request indicates that he was

awarded no more than $280 per hour in any pure FLSA overtime case. Hourly rates awarded in non-FLSA overtime cases are not particularly relevant as evidence of Rossiello's market rate in this case because the reasonable hourly rate is capped at the prevailing market rate for attorneys engaged in FLSA work. *See Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir.1996).

rate for their services was $320 and $102.50 per hour respectively. Spegon argues that Rossiello's affidavit established Rossiello's market rate at $320 (and his paralegal's at $102.50), and, therefore, the burden shifted to the Diocese to come forward with evidence to show why a lower rate should be awarded. Spegon submits that by failing to present affidavits to contradict Rossiello's market rate assertions, the Diocese conceded that Rossiello's market rate was $320 and his paralegal's rate was $102.50. Therefore, the court should have been compelled to award the requested rates, and its failure to do so was an abuse of discretion. We disagree.

■ Spegon's contention that the Diocese was required to come forward with counteraffidavits, instead of relying on Rossiello's past fee awards, to contest the requested rates makes little sense because a close examination of Spegon's fee submission demonstrates that the only reliable evidence he provided to support the reasonableness of the requested rates was Rossiello's past fee awards. First, since Rossiello has no fee-paying clients, he has no "actual" billing rate that can be presumed to be his market rate—despite his assertions to the contrary. *See People Who Care*, 90 F.3d at 1310. Furthermore, Spegon overestimates the evidentiary value of Rossiello's affidavit. An attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services. *See Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In *Blum*, the Supreme Court indicated that to aid the court in determining the appropriate market rate for the services of an attorney, "the burden is on the fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (emphasis added). Thus, in order to shift the burden to the Diocese,

Spegon was required to present some evidence, other than Rossiello's affidavit, that the requested rates were the market rates for someone of Rossiello's experience. As we explained above, Spegon could have accomplished this either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases. *See People Who Care*, 90 F.3d at 1310–12. In this case, Spegon did not support Rossiello's rates with affidavits from other attorneys; rather he relied on a number of Rossiello's past fee awards which is exactly what the Diocese did in opposing Rossiello's requested rates. Thus, Spegon's argument that the Diocese conceded Rossiello's market rate because it furnished no independent evidence of Rossiello's market rate is of little avail. While we believe that third party affidavits are a better way to prove market rates, if a fee applicant can establish that his requested hourly rate is the "market rate" by reference to his prior fee awards, then we see no reason why a defendant cannot point to that attorney's past fee awards to suggest that a lower hourly rate should be awarded.

■ This leads us to the real issue raised by Spegon—to what extent is a district court bound by another district court's determination of an attorney's "reasonable hourly rate." In suggesting why a lower rate should be awarded, the Diocese pointed to several recent FLSA overtime cases in which Rossiello and his paralegal had been awarded hourly rates below the rates requested in this case. After the Diocese replied to his initial fee petition, Spegon cited a 1997 FLSA overtime case in which another district court had awarded the rates requested here. *See LeTourneau v. Pan Amer. Financial Servs., Inc.*, No. 97–3543, 1998 WL 538130 (7th Cir. Aug. 21, 1998) (affirming hourly rates approved by the district court of $320 per hour for Rossiello and $102.50 for his paralegal). Spegon argued that the

*LeTourneau* court's fee award established Rossiello and his paralegal's current market rates. On appeal, he submits that the district court abused its discretion by not awarding the rates approved by the district court in *LeTourneau.* The gist of Spegon's argument is that having recently been awarded the requested rates by another district court, the district court in the instant case should have been compelled to award the same rates and its failure to do so constituted a per se abuse of discretion. We disagree.

 While hourly rates awarded to counsel in similar cases are evidence of an attorney's market rate, "each court should certainly arrive at its own determination as to a proper fee." *People Who Care,* 90 F.3d at 1312. In *People Who Care,* we explained that a district court abuses its discretion when it dismisses evidence of fee awards from other cases as "non-binding." *Id.* Thus, a district court abuses its discretion not when it declines to follow another court's determination of an attorney's reasonable hourly rate, but rather, when it dismisses that court's determination as irrelevant. In other words, evidence of fee awards from prior similar cases is relevant to a district court's determination of a reasonable hourly rate and cannot be ignored out-of-hand.

 In this case, there is no evidence to suggest that the district court ignored the *LeTourneau* fee award. The district court's decision clearly indicates that the court was aware of the fee awards cited by Spegon and considered those awards to be relevant to its determination of the market value of Rossiello and his paralegal's services. After considering the opinions of the other courts on the market rates of Rossiello and his paralegal, however, the district court elected to follow its own assessment as to the value of Rossiello's and his paralegal's performance. Since each court is entitled to arrive at its own determination as to a reasonable hourly rate for an attorney's services, *see id.,* the district court's hourly rate determinations in this

case are to be afforded great deference so long as the fee awards relied on by the district court in reaching its determination are sufficiently recent to be probative of counsel's current market rates. In this case, the fee awards the district court relied upon were handed down within two years of the court's fee determination and, thus, we believe, clearly probative of Rossiello's market rate. As such, we conclude that the district court did not abuse its discretion in reducing the hourly rates in this case.

**C. Whether the District Court Abused Its Discretion In Reducing the Modified Lodestar Amount. By Fifty Percent**

 Once the district court reaches an amount using the lodestar determination, it may then adjust that award in light of the plaintiff's "level of success." *See Hensley,* 461 U.S. at 436, 103 S.Ct. 1933; *Bankston,* 60 F.3d at 1255–56; *Ustrak,* 851 F.2d at 988–89. In *Hensley,* the Supreme Court set forth the basic approach to be taken by a district court in determining whether to adjust the modified lodestar amount to account for a plaintiff's limited success. *See* 461 U.S. at 434–38, 103 S.Ct. 1933. In a case involving a single claim or related claims, the court is directed to ask whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* at 434, 103 S.Ct. 1933. In so doing, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435, 103 S.Ct. 1933; *see also Jaffee v. Redmond,* 142 F.3d 409, 414 (7th Cir. 1998). When a plaintiff has obtained an excellent result, his attorney should recover a fully compensable fee (*i.e.,* the modified lodestar amount), and the fee "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. However, "[i]f . . . a plaintiff has achieved only partial or limited

success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436, 103 S.Ct. 1933. In such a case, the district court has the discretion to reduce the modified lodestar amount to reflect the degree of success obtained. *See id.* at 436–37, 103 S.Ct. 1933.

Spegon contends that the district court abused its discretion by reducing the modified lodestar amount by fifty percent to account for Spegon's limited success in this case. Spegon first argues that the size of his judgment should have no bearing upon his ability to collect a fully compensable attorneys' fee because there is no rule of proportionality in FLSA cases between the judgment recovered and the amount of fees to be awarded. Spegon is correct in that an attorney's failure to obtain every dollar sought on behalf of his client does not automatically mean that the modified lodestar amount should be reduced. *See Bankston*, 60 F.3d at 1255–56. However, by the same token, "district courts both can and should look to the degree of success a party achieves in deciding how generous a fee award should be." *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 736 (7th Cir.1998). In other words, although the fee award need not be proportionate to the amount of damages a plaintiff actually recovers, it is a factor that a court should consider when contemplating a reduction of the modified lodestar amount. *See City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).

As the district court noted, Spegon obtained a judgment from the Diocese in an amount far less than originally sought. Spegon raised two claims in his complaint against the Diocese: (1) that the Bishop violated the FLSA and Illinois law by not paying him the statutorily mandated overtime rate and (2) that the Bishop discriminatorily discharged him from his employment at the Parish because he expressed his opposition to the Parish's practice of not paying him the proper overtime wage. With respect to his first claim, Spegon asked for relief in the form of restitution of all back overtime wages, reinstatement to his former position or front pay in lieu thereof, and liquidated damages. With respect to his second claim, Spegon asked for injunctive relief and compensatory and punitive damages in the amount of $25,000.

It is readily evident that the $1,100 judgment recovered by Spegon was significantly less than the recovery he sought. Spegon was not reinstated to his job; nor was there any finding of liability or any award of damages with respect to his discriminatory discharge claim. In fact, the judgment Spegon recovered is a good deal less than the $1781.25 in back overtime pay Spegon claimed his employer owed him. Given the limited nature of the relief obtained by Spegon, we cannot conclude that the district court abused its discretion in deciding to reduce the modified lodestar amount.[7]

Nor do we believe the court abused its discretion in reducing the modi-

---

7. Spegon also argues that the district court erred in reducing the modified lodestar amount because it failed to recognize that the monetary judgment in this case did not represent the full value achieved by this litigation. In support of this contention, Spegon asks this Court to apply to FLSA claims the principles employed in analyzing "limited success" in a number of civil rights and Title VII cases. In such cases, the Supreme Court has reasoned that a plaintiff's success cannot be measured solely in monetary terms because a civil rights plaintiff often secures important non-monetary benefits by vindicating important civil and constitutional rights. *See Rivera*,

477 U.S. at 574, 106 S.Ct. 2686. The Court explained that "[b]ecause damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *Id.* at 575, 106 S.Ct. 2686. Spegon appears to be arguing that important non-pecuniary rights were championed in this case and, therefore, the modified lodestar amount should not have been reduced simply because Spegon's counsel failed to obtain a more significant monetary judgment. We disagree.

fied lodestar by one-half. The district court gave a sufficient explanation of why it reduced the modified lodestar—that Spegon succeeded only in obtaining a partial recovery of the back overtime pay he sought. In determining the proper amount to reduce a plaintiff's fee award to reflect the degree of success obtained, the district court has considerable discretion. *See Estate of Borst*, 979 F.2d at 516. As we explained, "[a] trial court should give its best estimate in light of its experience with the case to this 'elusive counterfactual' ... and a detached reviewing court should be reluctant to set aside these judgments." *Id.* In light of the fact that Spegon recovered substantially less than originally sought, both in terms of monetary and equitable relief, we cannot say the district court abused its discretion in reducing the modified lodestar by one-half.

## D. Whether the District Court Abused Its Discretion In Denying Certain Costs

 Spegon also appeals the district court's decision to deny as costs the $150 filing fee. "The award of costs is the type of discretionary ruling to which appellate courts should give virtually complete deference." *Id.* at 517 (citation and internal quotation marks omitted). A district court should disallow costs that are unreasonable either because they are excessive in amount or because they should not have been incurred at all. *See Zabkowicz v. West Bend Co.*, 789 F.2d 540, 553 (7th Cir.1986) (citation omitted). In light of our conclusion above regarding the appropriateness of the hours spent by counsel in connection with filing suit in this case, we cannot say that the district court abused its discretion in disallowing this fee.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court. The parties shall bear their own costs for this appeal.

---

Spegon's attempt to analogize this case to a civil rights action falls well short of convincing us to disturb the district court's decision for two reasons. First, as the district court aptly noted, we have cautioned against "[a]ny tendency to treat all attorneys' fee statutes as if they were insignificant variations on § 1988." *Stomper v. Amalgamated Transit Union, Local 241*, 27 F.3d 316, 318 (7th Cir. 1994). As we explained, civil rights statutes have "a unique background and history of interpretation, which cannot be generalized to other statutes authorizing the award of fees." *Id.* Second, even if we were to accept Spegon's invitation to apply the civil rights approach to "limited success," Spegon would gain little benefit because the nature of his recovery was essentially private. The Supreme Court has explained that "[w]here the recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Rivera*, 477 U.S. at 585, 106 S.Ct. 2686 (Powell, J., concurring in judgment)).

No important social benefits were furthered by this case. While Spegon's complaint was filed as a class action, it did not contain any class allegations; nor did Spegon offer any credible evidence that the Diocese was engaged in an intentional practice of violating the FLSA by not paying proper overtime wages to others. In fact, the district court found nothing in the record to suggest that the Parish's failure to properly compensate Spegon was anything more than a simple administrative mistake. Since Spegon abandoned any class allegations and he was unsuccessful in obtaining any form of injunctive or equitable relief, his claim that his actions vindicated important constitutional rights and deterred future violations by the Diocese is conjectural. *See Maul v. Constan*, 23 F.3d 143, 146–47 (7th Cir.1994). Instead, an examination of the relief sought and obtained by Spegon makes clear that the primary purpose of his lawsuit was the recovery of private damages. Thus, Spegon's monetary recovery was the only reasonable measure of Spegon's success in this case.